1  **POTTER HANDY LLP**
   Mark D. Potter (SBN 166317)
2  mark@potterhandy.com
   James M. Treglio (SBN 228077)
3  jimt@potterhandy.com
4  9845 Erma Road, Suite 300
   San Diego, CA 92131
5  (858) 375-7385
   Fax: (888) 422-5191
6
7  Attorneys for Plaintiff Brian Miller and the Class

**UNITED STATES DISTRICT COURT**

**BY AND FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRIAN MILLER, an individual, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RP On-Site, LLC, a Delaware Limited Liability Company with its principal place of business in California, RealPage, Inc., a Delaware Corporation with its principal place of business in Texas, inclusive,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF FAIR CREDIT REPORTING ACT:**<br><br>**(1) PROVIDING CONSUMER REPORTS WITH INACCURATE INFORMATION IN VIOLATION OF 15 U.S.C. § 1681e(b)**<br>**(2) REPORTING ANTEDATED ADVERSE INFORMATION IN VIOLATION OF 15 U.S.C. § 1681c(a).**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff BRIAN MILLER, on behalf of himself and all others similarly situated, and complaining of Defendants RP ON-SITE, LLC, and REALPAGE, INC. ("Defendants"), respectfully alleges as follows:

## I.     PRELIMINARY STATEMENT

1. This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") by Plaintiff seeking relief for Defendants' widespread violations thereof for himself and all others similarly situated.

2. Background checks, which were once expensive and rare, have, with the availability of public records online, become increasingly inexpensive for employers and landlords to utilize in making decisions on who to hire or who to rent to. As a result, a background check with adverse information, like an arrest or a conviction, can have dire consequences for the consumer beyond mere embarrassment, preventing them from getting their dream job, or finding a place to live.

3. For that reason, the Fair Credit Reporting Act requires consumer reporting agencies (the companies which furnish background checks) to take steps to insure that the information they provide is accurate and up-to-date. 15 U.S.C. §1681e(b). Further, the Fair Credit Reporting Act requires that consumer reporting agencies exclude any adverse information that predates the consumer report by seven years, so that consumers who have made mistakes in the past can move on with their lives. 15 U.S.C. § 1681c(a).

4. Despite the clear directions of the FCRA, Defendants have routinely failed to exclude adverse information that predates their consumer reports by seven years, and further compound the harm by inaccurately reporting arrests as felony convictions, or reporting convictions that have been expunged, to landlords in violation of FCRA sections 1681c(a) and 1681e(b). Defendants' practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate, adverse information, leading to losses of housing opportunities, as well as a loss of reputation.

5. As described in more detail below, Plaintiff Brian Miller was one of those consumers harmed by Defendants' practices.

///

1

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## II. JURSIDICTION AND VENUE

6. This Court has jurisdiction over the subject of this action pursuant to 15 U.S.C. § 1681, as well as 28 U.S.C. §§ 1331 and 1337.

7. The Court also has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of the Court and Defendant RP On-Site, LLC, has at all times mentioned herein maintained a regional headquarters (and possibly its main headquarters) in Campbell, California. Defendant RealPage, Inc., further, keeps and maintains a regional headquarters in San Francisco. Both Defendants have transacted business within this judicial district, and in the State of California; and the violations of law herein described have been committed within this judicial district, and the United States of America. Moreover, by doing business in this judicial district and committing violations of the Fair Credit Reporting Act, Defendants' conduct has had an adverse effect upon the finances of residents of this judicial district.

8. Venue as to each Defendant is proper in this judicial district, pursuant to 15 U.S.C. §§ 22 and 28 and 28 U.S.C. §1391(b)(2), because Defendants transact business and/or have transacted business during the relevant time period within the counties encompassed by the jurisdiction of the United States District Court for the Northern District of California. In addition, a substantial part of the acts giving rise to the claims set forth herein occurred in this judicial district, specifically, Campbell, California.

## III. PARTIES

9. Plaintiff Brian Miller ("Plaintiff" or "Ms. McIntyre") is an adult individual who resides in Arizona. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant RealPage, Inc. ("RealPage") regularly conducts business in the State of California, and keeps and maintains a regional headquarters in San Francisco, California.

11. Defendant RP On-Site, LLC ("On-Site") is a wholly owned subsidiary of RealPage. Prior to being acquired by RealPage in 2017, On-Site was known as On-Site Manager, Inc. According to the website of the California Secretary of State, On-Site's principal place of business is located in Texas. However, the consumer report issued to Plaintiff indicated that On-Site's main

2

1   offices are located at 307 Orchard City Drive, Suite 110, Campbell, CA 95008-2948. Moreover, On-Site's LinkedIn.com profile also indicates that its headquarters are located in Campbell, California, consistent with the address listed on the consumer report. Further, the user profiles of high-level On-Site staff on LinkedIn.com indicate they also reside in the San Francisco Bay Area, consistent with its principal place of business in California, not Texas. Further, on RealPage's website, which provides job listings for all of its subsidiaries, lists positions with On-Site as existing in Campbell, California, and not Texas. Thus, despite its statements to the contrary, On-Site's principal place of business is most likely located in Campbell, California. Even if that were not the case, Plaintiff is informed and believes that On-Site generates the consumer reports which form the basis of this action in Campbell, California.

12. Defendants RealPage and On-Site own and operate the website www.on-site.com, and operate under the fictitious business name of On-Site.com. In that capacity, Defendants provide tenant screening services to landlords throughout the United States, whereby landlords submit data electronically to Defendants' offices located in Campbell, California, regarding certain prospective tenants. Operating out of the Campbell, California office, Defendants then utilize data from various sources to generate tenant screening reports. Those reports are then transmitted electronically to landlords across the United States.

13. Thus, at all times pertinent hereto, Defendants RealPage and On-Site are and were "persons" and "consumer reporting agencies" ("CRA") within the meanings of 15 U.S.C. §§ 1681a(b) and (f), respectively. Plaintiff is informed and believes that RealPage and On-Site operate in conjunction to provide tenant screening products to its customers.

**IV.   FACTUAL ALLEGATIONS**

14. Plaintiff Brian Miller is a resident of the State of Arizona, who after serving time in prison, complied with all aspects of the law, and after repaying his debt to society, had his convictions set aside and expunged from his record in accordance with the laws of the State of Arizona, with the most recent order being issued in 2015. Under the laws of the State of Arizona, all rights he had before his troubles with the law have been restored to him, and he carries forward no disabilities from his prior troubles with the law.

15. On or about November 5, 2018, Plaintiff Brian Miller and his family applied for housing at F for Indigo Lots in his home state of Arizona. As part of his application, Brian Miller was required to undergo a tenant screening report conducted by the Defendants. Plaintiff was also required to pay a nonrefundable $100 deposit as part of the application process.

16. On or about November 7, 2018, Defendants submitted their consumer report to F for Indigo Lots, and to the Plaintiff, who had previously requested that a copy of his consumer report be sent to him. According to the report itself, the report was generated by On-Site at its offices located in Campbell, California.

17. The report, issued on November 7, 2018, contained a number of errors and misstatements. First, the consumer report contained information regarding convictions which had been previously set aside, and despite being set aside, were reported as "felony convictions" without any indication that the convictions had been set aside, or expunged.

18. Second, the consumer report stated that Plaintiff, between 2004 and 2007, had been convicted of twenty-six felonies for, amongst other things, assault, tampering with evidence, staff obstruction, stalking, and conspiracy, when in fact, these "felony convictions" were administrative actions which occurred when Plaintiff was in the custody of the Arizona Department of Corrections. None of these "felony convictions" were ever adjudicated in any court, and Plaintiff was never convicted of any crime as a result of these administrative actions.

19. Indeed, the report indicates that the source of its information was the Arizona Department of Corrections, but does not indicate a case number or dates for the filing of charges related to these "felony convictions," or when the plea of guilt was made, when a verdict was entered, or a date when the case was disposed. The reason for the lack of case numbers or relevant dates is simple – these administrative actions were never adjudicated by any Court, and were never intended to be adjudicated, as they were not criminal charges. Despite the fact that the records of these administrative actions clearly indicated that they were not convictions of any kind, Defendants, in their reports, stated that these administrative actions by the Arizona Department of Corrections were felony convictions.

20. As a result of the Defendants' erroneous consumer report, Plaintiff suffered embarrassment, loss of reputation, and had to withdraw his application for housing at F for Indigo Lots, losing his $100 deposit.

21. Shortly after receiving the information described in the preceding paragraph, Plaintiff exercised his rights under 15 U.S.C. § 1681i(a). Specifically, Plaintiff sent an email to Defendants in which he disputed the inaccurate information in the consumer report prepared by Defendants, stating that his prior felony convictions had been expunged in accordance with Arizona law, and that twenty-six "felony convictions" were, in fact, administrative actions, and were not convictions of any kind.

22. On or about January 9, 2019, Defendants completed their reinvestigation of Plaintiff's dispute. Despite the evidence provided to Defendants by the Plaintiff, Defendants refused to change or modify anything in their report.

### The Fair Credit Reporting Act ("FCRA")

23. The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date. The Fair and Accurate Credit Transactions Act amended the FCRA in December 2003, and the Dodd-Frank Act amended the FCRA in July 2010.

24. Defendants, through their tenant background screening solutions (collectively "screening solutions"), are and have been "consumer reporting agencies," as defined in Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f). That section defines a consumer reporting agency as:

> Any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

Defendants regularly sell in interstate commerce information on consumers that it assembles for furnishing consumer reports to third parties, as described further below.

25. The FCRA imposes several obligations on consumer reporting agencies, including obligations to take reasonable steps to ensure the maximum possible accuracy of consumer reports. 15 U.S.C. § 1681e(b). This obligation is described in more detail below.

**Defendants' Tenant Screening Reports Are Consumers Reports Subject to the Accuracy Requirements of the FCRA**

26. Defendants' screening solutions furnish background reports about consumers to thousands of client rental property owners and property management companies throughout the United States to, among other things, assist the clients in selecting tenants ("tenant screening reports"). These tenant screening reports may include rental histories and public record information, including criminal and eviction histories, of individuals from multiple sources. In addition, the tenant screening reports may include credit information from the nationwide consumer reporting agencies (Equifax, Experian, and TransUnion).

27. The tenant screening reports that Defendants furnish through their screening solutions to its clients are "consumer reports" as defined in Section 603(d) of the FCRA, 15 U.S.C. § 1681a(d). That section defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 604.

Defendants' tenant screening reports are communicated directly to third parties; bear on, among other things, consumers' credit worthiness, general reputation and personal characteristics; and are used as a factor in determining eligibility for housing.

28. Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29. Section 605(a)(2) and (5), 15 U.S.C. § 1681c(a)(2) and (5), states that a consumer reporting agency cannot report on records of arrest or other adverse information which predates the report by more than seven years.

30. According to the United States Federal Trade Commission in its October 2018 lawsuit against RealPage, "In numerous instances, RealPage failed to follow reasonable procedures to assure maximum possible accuracy of the criminal record information in its tenant screening reports."

31. Because of this finding by the United States Federal Trade Commission ("FTC"), Defendant RealPage, the corporate parent of On-Site, was required to pay the largest civil penalty in the history of the Fair Credit Reporting Act. Yet, despite that fact, and one month after paying the largest fine ever issued by the FTC for violating the FCRA, Defendants failed to follow reasonable procedures to assure that the consumer report conducted on the Plaintiff contained accurate information, resulting in a loss of reputation, and housing opportunity by the Plaintiff. Indeed, had Defendants undertaken reasonable procedures, they would have recognized that the disciplinary actions of the Arizona Department of Corrections were not felony convictions, and that Plaintiff's convictions had been expunged prior to the tenant screening report being issued.

32. Further, had Defendants exercised reasonable care, they would have recognized that all of the adverse information regarding Plaintiff's criminal history predated their report by more than seven years. At best, the administrative actions of the Arizona Department of Corrections, which were described by Defendants as "felony convictions" were either incidents of arrest or other adverse information, as defined by 15 U.S.C. § 1681c(a)(2) and (5), and which, having occurred in 2004-2007, all predated the report, issued in 2018, by 11-14 years. Similarly, the convictions which were set aside in accordance with Arizona law, could, at best, be described as "other adverse information," and they, too, predated the report by more than seven years.

33. Further, in 2018 alone, Defendants have been sued on no less than eleven occasions by consumers for inaccurately reporting criminal histories (including convictions which, as here, had previously been expunged), evictions, and other information which adversely affected their housing. These lawsuits, including the one by the FTC indicate a consistent pattern and practice of inaccurately reporting information affecting thousands of consumers nationwide, most likely the result of a refusal to code convictions which have been set aside, dismissed, or expunged correctly, and the result of refusing to properly code administrative, or disciplinary actions correctly.

34. Notably, prior to the purchase of On-Site Manager, Inc., and the conversion to RP On-Site, LLC, in 2017, not a single lawsuit was filed against On-Site for failing to report criminal convictions or charges correctly. Since the acquisition, On-Site, or RealPage operating under the On-Site name, has been sued for violating the FCRA at least eleven times. Plaintiff is informed and believes that upon being acquired by RealPage, On-Site because using RealPage's coding, which failed to properly report criminal charges and/or convictions to the detriment of Plaintiff and the Class Members as defined below.

35. As a result, Defendants' action can only be described as willful. Defendants have been fully aware that the consumer reports they issue on individuals like Plaintiff and the Class, as defined in below, contain information that is inaccurate, and which contains adverse information which predates the report by more than seven years. Further, Defendants' conduct is willful in that:

  a. The FCRA was enacted in 1970; Defendants have been providing consumer reports for over twenty years, and have had that time to become compliant;

  b. Defendants, particularly RealPage, are large corporations, which specialize in furnishing consumer reports for rental purposes and has access to legal advice through its outside employment counsel. Yet, there is no contemporaneous evidence that Defendants determined that their conduct was lawful;

  c. Defendants' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

  d. Within the past year alone, Defendants faced eleven separate lawsuits alleging that it has failed to comply with the FCRA, including from the FTC itself, and have yet to change their behavior; and,

  e. Defendants' similarly situated competitors have adopted policies of ensuring that their consumer reports are accurate.

## V.   CLASS ALLEGATIONS

36. Plaintiff brings this action on behalf of himself and all other persons similarly situated pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

37. Plaintiff is a member of and seeks to certify his claims alleged in his First Claim for Relief on behalf of a class defined as follows:

> All natural persons with an address in the United States and its Territories about whom, beginning two years prior to the filing of this Complaint and continuing

8

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

> through the resolution of this action, Defendants prepared a consumer report which included information regarding one or more criminal case which had been expunged, sealed, or otherwise removed from public dissemination at the time the report was prepared. ("The Expungement Class")

38. Plaintiff is also a member of, and seeks to certify his claims alleged in this First Claim for Relief on behalf of a class defined as follows:

> All natural persons with an address in the United States and its Territories about whom, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, Defendants prepared a consumer report which included information regarding one or more administrative action undertaken by a department of corrections which Defendants reported as a "felony conviction." ("The Administrative Action Class")

39. Plaintiff is also a member of and seeks to certify his claims alleged in his Second Claim for Relief on behalf of a class defined as follows:

> For the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendants that contained adverse information other than convictions (including criminal cases that had been expunged, sealed, set aside, or dismissed) that preceded the report by more than seven years. ("The Antedated Report Class")

40. Collectively, the Expungement Class, the Administrative Action Class, and the Antedated Report Class are hereinafter referred to as the Class, or the Class Members.

41. Defendants and their shareholders, officers, directors, and managing agents are excluded from the Class defined above. Plaintiff reserves the right under Rule 23 to amend or modify the class definitions with greater particularity or further division into subclasses or limitation to particular issues as warranted as additional facts are discovery by Plaintiff during his future investigations.

42. <u>Numerosity</u>: Although Plaintiff does not, as yet, know the exact size of the class defined above, based upon the nature of the Defendants' business, Plaintiff believes that there are numerous members of the class defined above, and that such members are geographically dispersed throughout the United States of America. Thus, the class defined above is sufficiently numerous to make joinder impracticable. The disposition of the claims of the members of the class defined above through this class action will benefit both the parties and this Court. In addition, the class defined

above is readily identifiable from information and records in the possession of Defendants as well as the members of the class.

43. <u>Commonality</u>: There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to each class and subclass predominate over questions that may affect individual class members, including the following:

a. Whether the Defendants' tenant screening reports are consumer reports for purposes of the FCRA;

b. Whether Defendants' provided consumer reports on Plaintiff and the members of the Class to its customers for monetary compensation;

c. Whether the Defendants take or took reasonable procedures to insure the accuracy of the consumer reports they issued to their customers for monetary compensation regarding Plaintiff and the Class;

d. Whether the consumer reports issued by Defendants regarding Plaintiff and the Expungement Class that contained criminal cases which had been expunged, sealed, or otherwise removed from public dissemination;

e. Whether the consumer reports issued by Defendants regarding Plaintiff and the Administrative Action Class contained administrative actions by departments of corrections;

f. Whether the consumer reports issued by Defendants regarding Plaintiff and the Administrative Action Class reported the administrative actions by departments of corrections as felony convictions;

g. Whether convictions which have been expunged, dismissed, set aside or sealed qualify as "other adverse information" as described in 15 U.S.C. § 1681c(a)(5);

h. Whether the Defendants provided consumers reports to its customers for monetary compensation regarding Plaintiff and the Antedated Report Class which contained adverse information other than convictions that antedated the consumer reports by seven years;

i. Whether such conduct violates the Fair Credit Reporting Act;

j. Whether Defendants willfully violated the Fair Credit Reporting Act;

  k. The proper measure of actual, statutory and punitive damages; and

  l. The proper measure of reasonable attorneys' fees and costs to be awarded to Plaintiff and Class Counsel.

44. <u>Typicality</u>: Plaintiff's and the Class Members' claims arise from and are caused by Defendants' policies, practices, and procedures with regard to the reporting of adverse information older than seven years and expunged convictions in violation of the Fair Credit Reporting Act. For these violations, Plaintiff and members of the Class seek actual, statutory or nominal, and punitive damages, injunctive relief, and expenses of litigation including costs and attorneys' fees.

45. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class since he is a member of the class he seeks to represent and Plaintiff has no interest that is contrary to, or in conflict with, those members of the Class he seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation involving the FCRA violations alleged herein to further ensure such protection and he intends to prosecute this action vigorously.

46. <u>Superiority</u>: The prosecution of separate actions by individual members of the Class create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants and could lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is far superior to other available methods for the fair and efficient adjudication of this controversy.

47. Proper and sufficient notice of this action may be provided to each class member through notice by such means as direct mail, electronic mail, publication on the internet, and/or television, radio, and/or print media outlets.

48. Plaintiff and the Class Members have suffered irreparable harm and damages as a result of Defendants' wrongful conduct as alleged herein, which is ongoing. Absent a representative action, Plaintiff and each class and subclass continue to be damaged, thereby allowing these

violations of law to proceed without remedy, and allowing Defendants to continue their wrongful conduct.

49. In addition, Defendants have acted or refused to act on grounds generally applicable to each member of the class, thereby making appropriate final classwide injunctive relief with respect to the class as a whole.

**FIRST CLAIM FOR RELIEF**
**For Violation of the Federal Credit Reporting Act**
**(Violation of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681m)**
**(On Behalf of Plaintiff, the Expungement Class, and the Administrative Action Class against All Defendants)**

50. Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

51. Plaintiff, the Expungement Class Members, and the Administrative Action Class Members are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c).

52. At all times pertinent hereto, Defendants RealPage, Inc., and RP On-Site, LLC, are and were defined as a "person" and "consumer reporting agency" (CRA) as those terms are defined by 15 U.S.C. §§ 1681a(b) and (f).

53. 15 U.S.C. § 1681e(b), requires that a consumer reporting agency, "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

54. As alleged herein, Defendants violated 1681e(b) in its consumer reports issued to its customers by reporting convictions which had been expunged, sealed, or otherwise removed from public dissemination.

55. Also as alleged herein, Defendants violated 1681e(b) by reporting administrative actions by departments of corrections as "felony convictions," when in fact, such administrative actions were never adjudicated in any Court.

56. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff, the Expungement Class Members and the Administrative Action Class Members under 15 U.S.C. § 1681e(b). In fact, Defendants have been

1  repeatedly sued for producing consumer reports which misstate criminal records, most recently by
2  the FTC in October of 2018.

3      57.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, Defendants are liable to the Plaintiff,
4  the Expungement Class, and the Administrative Action Class for willfully and/or recklessly failing
5  to follow reasonable procedures to assure maximum possible accuracy of the information
6  concerning the individual about whom a consumer report relates, in violation of section 1681e(b).

7      58.    As a result of such conduct, Plaintiff, the Administrative Action Class, and the
8  Expungement Class Members are entitled to their actual damages, statutory damages of not less
9  than $100 and not more than $1,000 of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

10     59.    As a result of such conduct, Plaintiff, the Administrative Action Class Members,
11 and the Expungement Class Members are entitled to such amount of punitive damages as the Court
12 may allow pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff, the Administrative Action Class
13 Members, and the Expungement Class Members are further entitled to reasonable attorneys' fees
14 in connection with this claim. 15 U.S.C. §1681n(a)(3).

**SECOND CLAIM FOR RELIEF**
**For Violation of the Federal Credit Reporting Act**
**Reporting Antedated Charges**
**(Violation of 15 U.S.C. § 1681c(a)(2) and (5))**
**(On Behalf of the Plaintiff and the Antedated Report Class against all Defendants)**

19     60.    Plaintiff hereby incorporates by this reference each and every preceding paragraph
20 of this Complaint as if fully set forth herein.

21     61.    In return for money, Defendants furnished consumer reports on Plaintiff and other
22 Antedated Report Class members, to third-parties for tenant screening purposes.

23     62.    The consumer reports issued by Defendants to its customers included (1) civil suits,
24 civil judgments, and records of arrest that, from date of entry, antedate the report by more than
25 seven years or until the governing statute of limitations has expired, whichever is the longer period;
26 and/or (2) any other adverse item of information, other than records of convictions of crimes, which
27 antedates the report by more than seven years.

63. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Antedated Report Class Members under 15 U.S.C. §§ 1681c(a)(2) and 1681c(a)(5).

64. Plaintiff and the Antedated Report Class Members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

65. Plaintiff and the Antedated Report Class Members are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

66. In addition, Plaintiff and the Antedated Report Class members are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## **DEMAND FOR JURY TRIAL**

57. Plaintiff hereby demands a jury trial on all causes of action and all claims with respect to which they have a right to a jury trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and all persons similarly situated, requests of this Court the following relief:

    a. certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiff and his counsel to represent the Classes;

    b. declaring that Defendants' actions as described above are in violation of the FCRA;

    c. awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

    d. awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

    e. awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    f. awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 1681o; and,

g.  granting such other and further relief as may be just and proper.

Dated: April 18, 2019                POTTER HANDY LLP


By: /s/ *James M. Treglio*
Mark Potter, Esq.
James M. Treglio, Esq.

Attorneys for Plaintiff, Brian Miller and the Class

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**