**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
8033 Linda Vista Rd, Suite 200
San Diego, CA 92111
(858) 375-7385
Fax: (888) 422-5191

Attorneys for Plaintiff BRIAN MILLER

## UNITED STATES DISTRICT COURT

## BY AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN MILLER, an individual, on behalf of himself and all persons similarly situated, | Case No. 5:19-cv-02114 |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| RP On-Site, LLC, a Delaware Limited Liability Company with its principal place of business in California, | <u>Hearing</u><br>Date: November 19, 2020<br>Time: 1:30 p.m.<br>Courtroom: 8<br>Judge: Hon. Judge Lucy H. Koh |
| Defendants. | |

1

2

## **TABLE OF CONTENTS**

3   I.    INTRODUCTION ……………………………………………………    1

4   II.   STATEMENT OF FACTS…………...……………………………………    3

5         A.   On-Site's Processes ……………………………………………..    3

6         B.   The Plaintiff Was Subject to An Erroneous Report by On-Site …….    4

7         C.   Plaintiff Was Harmed By On-Site's Systematic Reporting Problems..    6

8         D.   Defendant's Policies Affected Thousands of Consumers ……………    7

9   III.  ARGUMENT …………………………………………………………    8

10        A.   Standard For Class Certification ………………………………………    8

11        B.   Summary of Law Under the FRCA …………………………………    10

12        **C.**   The Proposed Class Meets The Requirements Of Rule 23(a) ………..    11

13              1.   The Class Is Sufficiently Numerous and Ascertainable ……………...    11

14              2.   Significant Common Questions May Be Answered By Common Proof  13

15              3.   The Named Plaintiff's Claims Are Typical …………………………    14

16              4.   The Named Plaintiff is An Adequate Representative ………………..    15

17              5.   The Proposed Class Satisfies The Requirements of Rule 23(B)(3) ….    15

18                   a.   Common Questions Predominate Over Individual Questions .    15

19                   b.   Class Action is a Superior Means of Adjudicating the
20                        Issues in this Case ………………………………………………    17

21  IV.   CONCLUSION …………………………………………………………    19

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*
    521 U.S. 591, 625 (1997) …………………………………………………… 15

*American Pipe and Costr. Co. v. Utah*
    414 U.S. 538, 551 (1974) …………………………………………………... 8

*Armstrong v. Davis*
    275 F.3d 849, 872 (9th Cir. 2001) …………………………………………. 9

*Ashby v. Farmers Ins. Co.*
    592 F. Supp. 2d 1307, 1317 (D. Or. 2008) ………………………………… 16

*Briseno v. ConAgra Foods, Inc.*
    844 F.3d 1121, 1125 n.4 (9th Cir. 2017) ………………………………….. 11

*Campos v. Choicepoint, Inc.*
    237 F.R.D. 478, 490 (N.D. Ga. 2006) ……………………………………… 9

*Carnegie v. Household Int'l., Inc.*
    376 F.3d 656, 661 (7th Cir. 2004) …………………………………………... 2

*Casella v. Equifax Credit Info. Servs.*
    56 F.3d 469, 473 (2d Cir. 1995 ……………………………………………. 10

*Clark v. Experian Info. Solutions, Inc.*
    No. 8:00- cv-1217-CMC, (D. S.C. June 26, 2002) …………….…...…....……… 9-10, 16

*Cooper Companies Inc. Sec. Litig.*
    254 F.R.D. 628, 634 (C.D. Cal. 2009) ……………………………………… 11

*Dukes v. Wal Mart, Inc.*
    474 F.3d 1214, 1224 (9th Cir. 2007) ………………………………………. 9

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970, 985 (9th Cir. 2011)    ………………………………………. 14

*Farmer v. Brennan*
    511 U.S. 825, 836 (1994) …………………………………………………... 10

*Feliciano v. CoreLogic Rental Prop. Sols. LLC*
    332 F.R.D. 98, 105 (S.D.N.Y. 2019) ………………………………………… 10, 13

*Gillespie v. Equifax Info. Servs. LLC*
    2008 WL 4614327, (N.D. Ill. Oct. 15, 2008) ……………………….…....... 9

*Haley v. Medtronic, Inc.*
      169 F.R.D. 643, 647 (C.D.Cal. 1996) ……………………………………… 8

*Harris v. Palm Springs Alpine Estates, Inc.*
      329 F.2d 909, 913 (9th Cir. 1964) ……………………………………… 9

*Hawaii v. Standard Oil Co. Of Calif.*
      405 U.S. 251, 266 (1972) …………………………………………….. 8

*Hanon v. Dataproducts Corp.*
      976 F.2d 497, 508 (9th Cir. 1992) ……………………………………… 14

*Henderson v. Trans Union L.L.C.*
      2016 U.S. Dist. LEXIS 59198 (E.D. Va. May 3, 2016) ……………………… 18

*Holman v. Experian Info. Solutions, Inc.*
      2012 WL 1496203 (N.D. Cal. Apr. 27, 2012) ………………………………… 9

*In re Facebook, Inc.*
      312 F.R.D. 332, 351 (S.D.N.Y. 2015) …………………………………….. 17

*In re Farmers Ins. Co.*
      738 F. Supp. 2d 1180, 1226 (W.D. Okla. 2010) ……………………………… 16

*In re Prudential*
      148 F.3d 283, 315 (3d Cir. 1998) ………………………………………… 17

*Manno v. Healthcare Revenue Recovery Group LLC*
      289 F.R.D. 674, 690 (S.D. Fla. 2013) …………………………………… 18

*Massey v. OnSite Manager, Inc.*
      285 F.R.D. 239 (E.D. NY 2012)…………………………………………… 17-18

*Mazza v. Am. Honda Motor Co.*
      666 F.3d 581, 589 (9th Cir. 2012) ………………………………………… 12

*Mcintyre, et al, v. Realpage, Inc., D/B/A On-Site*
      No. CV 18-3934, 2020 WL 5017612, (E.D. Pa. Aug. 25, 2020) …   10, 11, 12,14

*Moore v. Hughes Helicopters, Inc.*
      708 F.2d 475, 480 (9th Cir. 1983) …………………………………………… 9

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*
      311 F.R.D. 590, 609 (C.D.Cal. 2015) …………………………………….. 12

*Rodriguez v. Hayes*
      591 F.3d 1105, 1124 (9th Cir.2010) …………………………………….. 14

*Rubber Chemicals Antitrust Litig.*
    232 F.R.D. 346, 350 (N.D.Cal.2005) ……………………………………… 11

*Safeco Ins. Co. of Am. v. Burr*
    551 U.S. 47, 57-58 (2007) …………………………………………………… 10

*Schweitzer v. Equifax Info. Sols. LLC*
    441 Fed. Appx. 896, 902 (3d Cir. 2011) …………………………………….. 10

*Serrano v. Sterling Testing Sys., Inc.*
    711 F. Supp. 2d 402, 413 (E.D. Pa. 2010) ………………………………… 17

*Smilow v. Sw. Bell Mobile Sys.*
    323 F.3d 32, 41 n.9 (1st Cir. 2003) …………………………………………….. 17

*Soutter v. Equifax Info. Servs., LLC*
    307 F.R.D. 183, 203 (E.D. Va. 2015) …………………………………..…. 13, 16

*Staton v. Boeing Company*
    327 F.3d 938 (9th Cir. 2003) ……………………………………………………… 9

*Sykes v. Mel S. Harris & Associates*
    780 F.3d 70 (2nd Cir. 2015) …………………………………………………… 17

*True Health Chiropractic, Inc. v. McKesson Corp*
    896 F.3d 923, 929 (9th Cir. 2018) ………………………………………….. 11

*Tyson Foods, Inc. v. Bouaphakeo*
    136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) …………………………….. 15

*Van Colla v. County of Ventura*
    189 F.R.D. 583, 590 (C.D.Cal. 1999) ……………………………………………. 8

*Visa Check/Mastermoney Antitrust Litig. v. Visa*
    280 F.3d 124, 140 (2d Cir. 2001) ……………………………………………. 15

*Wal–Mart Stores, Inc. v. Dukes*
    131 S.Ct. 2541, 2551 (2011) ……………………………………………………. 12

*Western States Wholesale v. Synthetic Indus.*
    206 F.R.D. 271, 274 (C.D. Cal. 2002) …………………………………………….. 9

*White v E-Loan, Inc.*
    2006 WL 2411420 (N.D. Cal. Aug. 18, 2006) ………………………………….. 9

# STATUTES

A.R.S. § 13-907 ……………………………………………………………….   5

15 U.S.C. § 1681c(a)(5) …………………………………………………….   15

15 U.S.C. § 1681e(b) ……………………………………………………….   2, 10

15 U.S.C. § 1681n ………………………………………………………...   2

15 U.S.C. § 1681n(a) ……………………………………………………….   10

# RULES

Fed. R. Civ. P. 23 ………………………………………………… 8, 9, 11,15

Fed. R. Civ. P. 23(a) …………………………………………....  8, 9, 11, 14, 18

Fed. R. Civ. P. 23(a)(1) ……………………………………………   11

Fed. R. Civ. P. 23(b)(3) ……………………………………….., 1, 15, 16, 17, 18

Fed. R. Civ. P. 23(b)(3)(A)-(D) …………………………………………   17

Fed. R. Civ. P. 23(g) …………………………………………………   18

# SECONDARY SOURCES

J.J. Prescott & Sonja B. Starr, *Expungement Of Criminal Convictions: An Empirical Stud*,
    133 Harv. L. Rev. 2460, at 2490 (June 2020). ……………………………   7

H. Newberg & A. Conte, *Newberg on Class Actions*
    § 7.20 (4th ed. 2002) …………………………………………   17

H. Newberg & A. Conte, *Newberg on Class Actions*
    § 21.30 (4th ed. 2002) …………………………………………   17

2 William B. Rubenstein, *Newberg on Class Actions*
    § 4.72 (5th ed. West 2014) ……………………………………………   15

Tewksbury, R., Connor, D., & Denney, A. *Disciplinary Infractions Behind Bars*.
    Criminal Justice Review, 39(2), 201-218 at 209 (2014) ………………………   7

# I.      INTRODUCTION

Plaintiff Brian Miller ("Miller"), on behalf of himself and all others similarly situated, brings this action against Defendant RP On-Site LLP ("Defendant" or "On-Site") for failure to accurately and completely report criminal convictions and disciplinary infractions issued by Departments of Corrections in violation of the Fair Credit Reporting Act ("FCRA"). Defendant routinely generates consumer reports that are inaccurate in material respects because of how it codes disciplinary infractions by departments of corrections, and how it handles convictions which have been dismissed, set aside, or otherwise expunged. Since On-Site lacks appropriate procedures and processes to ensure maximum possible accuracy of the information on which it reports, as required by the law, it is liable under the FCRA.

On-Site's failure to comply with the FCRA has a real impact on potential tenants, such as Brian Miller. A consumer report which should not have any reported convictions, suddenly has possibly dozens of convictions listed on their consumer report, leading to loss of housing, and a loss of reputation. Indeed, On-Site's corporate parent, RealPage, Inc., was fined by the United States Fair Trade Commission finding, "In numerous instances, RealPage failed to follow reasonable procedures to assure maximum possible accuracy of the criminal record information in its tenant screening reports." Similarly, the processes used by On-Site are equally inaccurate as they do not distinguish between disciplinary infractions and felony convictions. Nor does On-Site exclude convictions which have been set aside, or dismissed. In ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████

Accordingly, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff moves for certification (the "Motion") of the following classes (the "Class"):

> All natural persons with an address in the United States and its Territories about whom, from April 19, 2017 and continuing through the resolution of this action, Defendants prepared a consumer report which included information regarding one or more criminal case which had been expunged, sealed, or otherwise removed from public dissemination at the time the report was prepared. ("The Expungement Class")

All natural persons with an address in the United States and its Territories about whom, from April 19, 2017 continuing through the resolution of this action, Defendants prepared a consumer report which included information regarding one or more administrative action undertaken by a department of corrections which Defendants reported as a "felony conviction." ("The Disciplinary Infraction Class")

All natural persons with an address in the United States and its Territories who were subjects of tenant screening reports created by Defendants from April 19, 2017 and continuing through the resolution of this action, that contained adverse information other than convictions (including criminal cases that had been expunged, sealed, set aside, or dismissed) that preceded the report by more than seven years. ("The Antedated Report Class")

This case is the archetype of a lawsuit appropriate for class action treatment. Plaintiff meets the core prerequisites required to certify the Class – numerosity, commonality, typicality and adequacy.  Because this action deals solely with how On-Site intakes and reports data, there are no individual issues. So long as Plaintiff proves that On-Site willfully (which, under the FCRA, means it recklessly disregarded its statutory duty[i]) failed to "follow *reasonable procedures* to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates," 15 U.S.C. § 1681e(b) (emphasis added), then Congress has provided for statutory damages of not less than $100 per violation and up to $1000 for each willful violation. 15 U.S.C. § 1681n. That means that this case does not even present issues as to differing damages. And, ultimately, the common and core liability question of whether On-Site's processes complied with the FCRA involves a classwide determination of analyzing the facts relating to On-Site's processes against those laws' requirements, a classwide common determination not involving individual issues.

The alternative to class certification is that On-Site would not be held to account for its failure to employ proper procedures. The claims would be lost for all intents and purposes. The consumer nature of this case underlines this point once made by Judge Richard Posner:

The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative – no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no litigation at all.

*Carnegie v. Household Int'l., Inc.,* 376 F.3d 656, 661 (7th Cir. 2004).

1    Due to its improper practices and procedures, Plaintiff alleges that On-Site willfully
2    violated the FCRA and seeks statutory and punitive damages.  As a member of the putative class,
3    Plaintiff has no interests adverse to the Class and will adequately represent the Class. Accordingly,
4    Plaintiff's Motion should be granted.

5    **II.    STATEMENT OF FACTS**

6          **A.    On-Site's Processes**



**B.**     **The Plaintiff Was Subject to An Erroneous Report by On-Site**

Plaintiff Brian Miller is a resident of the State of Arizona, who in November of 2018, applied for housing with his wife and family at Indigo Lofts, located in Mesa, Arizona. As part of his application process, Brian Miller underwent a consumer report by the Defendant. (Decl. Brian Miller at ¶¶ 2, 6-7; Decl. Heather Miller at ¶¶ 3, 5-6). That consumer report ("Report") stated that Miller had over 29 felony convictions for a variety of crimes, including sexual harassment. (Decl.

1    Miller, at Exh. 3). The Report issued by On-Site was so bad that manager of the apartment

2    complex Miller applied to met privately with Miller's wife and asked if she should still be married

3    to Miller. (Decl. Heather Miller at ¶ 10). As a result of the items contained in the Report, Brian

4    Miller's application for housing was turned down, and he suffered a loss of reputation in his

5    community. (Decl. Heather Miller at ¶ 12, Decl. Brian Miller at ¶ 28; Decl. Treglio, Exh. 4, a p. 1

6    "Lease canceled by Ambar Villar on 11/21/2018").

7         However, the Report itself was incorrect in several respects. First, while Brian Miller had

8    been convicted of felonies in the State of Arizona, all of those convictions had been set aside under

9    Arizona law. (Decl. of Brian Miller, at ¶ 4, Request for Judicial Notice, Exh. 12, and 13). As such,

10   under A.R.S. § 13-907,[1] all of his convictions had previously been set aside as a matter of Arizona

11   law. The other 26 "felony convictions" as reported by On-Site in Exhibit 3 were not, in fact, felony

12   convictions at all. Rather, they were disciplinary records from the Arizona Department of

13   Corrections. (Decl. Miller at ¶ 14). For instance, the so-called felony conviction for a sex act found

14   on page 5 of Exhibit 3 refers to a time where Brian Miller told a corrections officer to kiss his

15   posterior. (Decl. Miller at ¶ 14). And indeed, at no time in prison was Brian Miller charged with a

16   crime by a District Attorney, indicted by a grand jury, or tried before a judge or a jury for any of

17   these "felony convictions."

18   ███████████████████████████████████████████

19   ███████████████████████████████████████████

20   ███████████████████████████████████████████

21   ███████████████████████████████████████████

22   ███████████████████████████████████████████

23

24   [1] Arizona Revised Code §13-907(A) states:

25       Except as provided in subsection E of this section, every person convicted of a criminal
         offense, on fulfillment of the conditions of probation or sentence and discharge by the
26       court, may apply to the judge, justice of the peace or magistrate who pronounced sentence
         or imposed probation or such judge, justice of the peace or magistrate's successor in office
27       to have the judgment of guilt set aside.  The convicted person shall be informed of this
         right at the time of discharge.
28

1   ████████████████████████████████████████████████████

2   ████████████

3          As a result of the loss of housing, Brian Miller submitted a dispute to On-Site in an effort to

4   clear his name. (Decl. Brian Miller at ¶ 21; ████████  On January 8, 2019, some sixty days

5   after the dispute was initiated, On-Site completed the dispute process, determining that twenty-

6   eight of its reported infractions were inaccurate. ████████████

7   **C.       Plaintiff Was Harmed By On-Site's Systematic Reporting Problems**

8          As noted in Plaintiff's Complaint (Dk. No. 1), and above, Plaintiff alleges that his report

9   was inaccurate and/or reported adverse information older than seven years based on (1) the

10  reporting of felony convictions which had been set aside, and (2) the reporting of disciplinary

11  infractions as felony convictions, which it absolutely did, and as a result, Defendant struck 28

12  "felony convictions" from Plaintiff's consumer report. ████████  By then, though, the

13  damage had been done. Brian Miller's application was denied on November 28, 2018. (Decl.

14  Treglio at Ex. 4).

15          ████████████████████████████████████████████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████

18  ████████  This reporting of disciplinary infractions from a department of corrections is

19  uniformly erroneous because disciplinary infractions are not convictions in any way, shape or

20  form. (See Request for Judicial Notice, Exh. 14, 15, and 16). Prisoners are not charged in any

21  Court of law, do not receive assistance of counsel, and are not provided with jury trials. (Id.). And

22  in fact, prisoner records from departments of corrections, such as the Arizona Department of

23  Corrections, do not list felony convictions, but rather, list disciplinary infractions. (See Request

24  for Judicial Notice, Exh. 17 and 18).

25          The reason for this error is unclear, as when asked, On-Site's corporate designee was

26  unable to explain why On-Site designated disciplinary infractions as felony convictions, ████

27  ████████████████████████████████████████████████████

28

██████████████████████████████████████ Again, that is not how the Arizona Department of Corrections reports such infractions to the public. (See Request for Judicial Notice, Exh. 17). █████████████████████████████████████████████████████████████ ████████████████████████████

Further, Plaintiff was harmed by Defendant's policy of reporting convictions. Plaintiff was convicted of two felonies. (Decl. Brian Miller at ¶ 3). Each of the two were set aside by order of the Maricopa County Superior Court, (Request for Judicial Notice at Ex. 12, and 13) but two were reported by On-Site (Decl. Treglio at Ex. 3). He was never convicted of any felony related to his time in prison, though On-Site reported as such. (Decl. Miller at ¶14). ████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████ And as seen on Exhibit 3, completeness for criminal reports does not include orders granting civil rights. This too was not due to a unique circumstance of Plaintiff, but how Defendant coded received from their vendor.

D.      **Defendant's Policies Affected Thousands of Consumers**

In ███████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████. While Defendant has yet to provide the discovery necessary to determine how many individuals were affected by its practices, reasonable estimates from reputable sources can be made. According to one study of the Harvard Law Review, approximately 6.5% of all persons with felony convictions get their convictions expunged, set aside, or dismissed. J.J. Prescott & Sonja B. Starr, *Expungement of Criminal Convictions: An Empirical Stud*, 133 Harv. L. Rev. 2460, at 2490 (June 2020). Further, a study of prisoners indicates that at least 52.5% of all prisoners incur at least one disciplinary infraction during their prison stays. Tewksbury, R., Connor, D., & Denney, A. *Disciplinary Infractions Behind Bars*. Criminal Justice Review, 39(2), 201-218 at 209 (2014). █████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████

2 ███████████████████████████████████████████

3 ███████████████████████████████████████████

4 ███████████████████████████████████████████

5 ████████████████████████

6 **III.    ARGUMENT**

7      **A.  Standard For Class Certification.**

8      Federal Rule of Civil Procedure, Rule 23(A) provides that class certification is authorized

9 when the class is so numerous that joinder of all members is impracticable, there are questions of

10 law or fact common to the class, the claims or defenses of the representative parties are typical of

11 those of the class, and the representative parties will fairly and adequately protect class interests.

12      Additionally, to maintain the class action, Rule 23 requires that the plaintiff establish that

13 either: (1) there is risk of inconsistent or unfair adjudication; (2) the defendant acted on grounds

14 generally applicable to the class, making injunctive or declaratory relief appropriate as to the class

15 as a whole; or (3) common questions of law or fact predominate and class resolution is superior to

16 other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P.

17 23(b). Plaintiff need only meet one of the conditions under Rule 23(b), all three tests can be

18 satisfied under the circumstances of this action. Although plaintiff bears the burden of

19 demonstrating that Rule 23's requirements are satisfied, *Haley v. Medtronic, Inc.,* 169 F.R.D. 643,

20 647 (C.D.Cal. 1996), ruled that the requirements of Rule 23 "should be liberally construed." 3

21 Alba Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002). When evaluating

22 whether the requirements of Rule 23 are met in a particular case, "a district court should bear in

23 mind the two goals behind Rule 23 . . . ." V*an Colla v. County of Ventura*, 189 F.R.D. 583, 590

24 (C.D.Cal. 1999).

25      First, class actions are important because they "enhance the efficacy of private actions by

26 permitting citizens to combine their limited resources to achieve a more powerful litigation

27 posture." *See Hawaii v. Standard Oil Co. Of Calif.,* 405 U.S. 251, 266 (1972). Second, class

28

actions "promote efficiency and economy of litigation by consolidating numerous individual suits into a single suit." *American Pipe and Costr. Co. v. Utah,* 414 U.S. 538, 551 (1974). As such, Rule 23 provides district courts with broad discretion to determine whether a class should be certified. *See Armstrong v. Davis,* 275 F.3d 849, 872 n.28 (9th Cir. 2001); *Dukes v. Wal Mart, Inc*., 474 F.3d 1214, 1224 (9th Cir. 2007). In evaluating a motion for class certification, the allegations in plaintiff's complaint are accepted as true. *Western States Wholesale v. Synthetic Indus.,* 206 F.R.D. 271, 274 (C.D. Cal. 2002) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975)). "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc*., 708 F.2d 475, 480 (9th Cir. 1983) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)). Instead, at this point in the litigation, the Court need only determine if the plaintiff has satisfied Rule 23, not weigh competing evidence. *Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003). Any doubt as to the propriety of certification should be resolved in favor of certifying the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964).

Judges within this District have certified classes in similar FCRA cases. Judge Wilken certified a statutory damage FCRA class in *Holman v. Experian Info. Solutions, Inc.*, 2012 WL 1496203 (N.D. Cal. Apr. 27, 2012), a case involving approximately 40,000 consumers whose credit reports had been sold by another consumer reporting agency to a collection agency that lacked a permissible purpose to obtain most of the reports. In *White v E-Loan, Inc*., 2006 WL 2411420 (N.D. Cal. Aug. 18, 2006), Judge Illston certified an FCRA statutory damage class with 100,000 members. Federal judges elsewhere have also had no problem in certifying both contested and settled FCRA classes alleging, as in the case at bar, that a consumer reporting agency made an improper file disclosure to consumers or prepared consumers reports containing inaccurate information. *See, e.g.*, *Gillespie v. Equifax Info. Servs. LLC*, 2008 WL 4614327, at *9 (N.D. Ill. Oct. 15, 2008) (certifying class action under FCRA section 1681g(a)); *Campos v. Choicepoint, Inc.*, 237 F.R.D. 478, 490 (N.D. Ga. 2006) (same); *Clark v. Experian Info. Solutions,*

*Inc.*, No. 8:00- cv-1217-CMC, Dkt. No. 96 (D.S.C. June 26, 2002) (order certifying class action under FCRA section 1681e(b)).

Further, the United States District Court for the Eastern District of Pennsylvania just certified a class against Defendant's inaccuracies related to reporting of evictions on the very same consumer reports that are at issue here. *Patricia McIntyre, et al, v. Realpage, Inc., D/B/A On-Site*,, No. CV 18-3934, 2020 WL 5017612, at *8 (E.D. Pa. Aug. 25, 2020). As in *McIntyre*, this action is ripe for class treatment.

**B.  Summary of Law Under the FCRA**

The Court in *McIntyre v. RealPage, Inc. d/b/a On-Site* recently summarized the Fair Credit Reporting Act as it relates to similar claims thusly:

> "The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995) (citing 15 U.S.C. §§ 1681o & 1681n) (citations omitted).

> The duty at issue in this case is imposed by 15 U.S.C. § 1681e(b), which provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e(b).

> The statute provides for the following damages:
> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
> 15 U.S.C. § 1681n(a).

> The elements of a willfulness claim are (1) inaccuracy and (2) a failure to follow reasonable procedures that is (3) knowing or reckless. *Feliciano v. CoreLogic Rental Prop. Sols., LLC*, 332 F.R.D. 98, 105 (S.D.N.Y. 2019); *see Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007) ("willfulness" in FCRA encompasses both knowing and reckless violations). "Willful" under the FCRA means "reckless disregard of statutory duty." *Safeco*, 551 U.S. at 57-58. A reckless action entails "an unjustifiably high risk of

harm that is either known or so obvious that it should be known." *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Thus, unlike with negligence claims, actual damages and causation are not elements of a willfulness claim.

The overwhelming weight of authority holds that a credit report is inaccurate under § 1681e(b) either "when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Schweitzer v. Equifax Info. Sols. LLC*, 441 Fed. Appx. 896, 902 (3d Cir. 2011) (citations omitted).

*McIntyre v. Realpage, Inc., d/b/a OnSite,* No. CV 18-3934, 2020 WL 5017612, at *8 (E.D. Pa. Aug. 25, 2020). Here, as with many cases under the FCRA, and unlike most consumer class actions or wage and hour class actions, the issues here deal solely with how Defendant manages and reports its data, not on the expectations or actions of the Plaintiff or the putative class.

## C.   The Proposed Class Meets The Requirements Of Rule 23(a)

### 1.   The Class Is Sufficiently Numerous and Ascertainable

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D.Cal.2005). However, numerosity is presumed where the plaintiff class contains forty or more members. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (*citing to Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995)). As described above, On-Site issued reports on 107,183 individuals with felony convictions.  (Decl. Treglio Ex. B at 23:23-24:5). If the reports by the Harvard Law Journal and the Criminal Justice Review are correct, then the number of Class Members affected by Defendant's policy of reporting disciplinary infractions as felony convictions, and reporting convictions which have been dismissed, set aside, or expunged, then the Class would exceed several thousand individuals.

The Ninth Circuit has not adopted an "ascertainability" requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 (9th Cir. 2017). Instead, the Ninth Circuit has "addressed the types of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues … through analysis of Rule 23's enumerated requirements." (Id.) Where a class can be defined by

reference to "objective criteria," it meets the "ascertainability" requirement. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 609 (C.D.Cal. 2015). The Ninth Circuit later held that all a Plaintiff need show is that the identification of class members is administratively feasible. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018), ("We understood defendant's argument to be that identification of class members must be "administratively feasible[.]" *Id.* at 1133. [citing *Briseno*].

Here, the identification of class members is administratively feasible based on Defendant's own records. It ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

As the District Court for the Eastern District of Pennsylvania recently held:

> Here, members are not impossible to identify. In fact, there is nothing extensive about identification. Defendant's concerns do not reflect an inability to determine class members by reference to an objective criteria. All of the individualized fact-finding Defendant describes—which it claims will give rise to "mini-trials"—are merits determinations, not some administrative review to determine whether an objective element of a class definition is met. At this stage, she need only show how class members can be identified. The Court agrees with Plaintiff that the records are enough to ascertain a class and, moreover, to provide notice to an identifiable group of tenant applicants similarly situated to Plaintiff. Plaintiff correctly points out that Defendant contradicts itself insofar as it may rely upon its summary court records to sell reports and conduct its business, but Plaintiff cannot rely upon those same records to ascertain a class. *Id.* at 13. Therefore, in sum, Plaintiff has identified objective criteria, in the form of business and court records, from which a class can be ascertained. Accordingly, the proposed class definition meets the requirements for ascertainability.

*Patricia McIntyre, v. Realpage, Inc., D/B/A On-Site,* No. CV 18-3934, 2020 WL 5017612, at *10 (E.D. Pa. Aug. 25, 2020). As noted above, Plaintiff has demonstrated that, like Ms. Mcintyre, he can use both public records and OnSite's own records to identify the class members

///

///

2. Significant Common Questions May Be Answered By Common Proof

Commonality is satisfied when there exists a common question "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). One such common question in this case is whether the reporting of disciplinary infractions as felony convictions violates the Fair Credit Reporting Act, 15 U.S.C. §1681e(b) will resolve an issue central to Defendants' liability in this case. *See Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 589 (9th Cir. 2012) ("commonality only requires a single significant question of law or fact."). In Plaintiff's Complaint, Plaintiff identified further common issues of law and fact:

> a. Whether the Defendants' tenant screening reports are consumer reports for purposes of the FCRA;
> b. Whether Defendants provided consumer reports on Plaintiff and the members of the Class to its customers for monetary compensation;
> c. Whether the Defendants take or took reasonable procedures to insure the accuracy of the consumer reports they issued to their customers for monetary compensation regarding Plaintiff and the Class;
> d. Whether the consumer reports issued by Defendants regarding Plaintiff and the Expungement Class that contained criminal cases which had been expunged, sealed, or otherwise removed from public dissemination;
> e. Whether the consumer reports issued by Defendants regarding Plaintiff and the [Disciplinary Infractions Class][2] contained [disciplinary infractions] by departments of corrections;
> f. Whether the consumer reports issued by Defendants regarding Plaintiff and the [Disciplinary Infractions Class] reported the [disciplinary infractions] by departments of corrections as felony convictions;
> g. Whether convictions which have been expunged, dismissed, set aside or sealed qualify as "other adverse information" as described in 15 U.S.C. § 1681c(a)(5);
> h. Whether the Defendants provided consumers reports to its customers for monetary compensation regarding Plaintiff and the Antedated Report Class which contained adverse information other than convictions that antedated the consumer reports by seven years;
> i. Whether such conduct violates the Fair Credit Reporting Act;
> j. Whether Defendants willfully violated the Fair Credit Reporting Act;
> k. The proper measure of actual, statutory and punitive damages; and

---

[2] In the Complaint, Plaintiff uses the term "administrative charges" to refer to the disciplinary infractions issued by departments of corrections. To more closely align with the terms used by departments of corrections, Plaintiff has changed the language and the class definition.

1.  The proper measure of reasonable attorneys' fees and costs to be awarded to Plaintiff and Class Counsel.

(Dkt. No. 1, p. 10, ¶43). Because this action revolves around the policies, practices, and procedures used by Defendant to produce consumer reports, these issues can be resolved on a class-wide basis. *Feliciano v. CoreLogic Rental Prop. Sols., LLC,* 332 F.R.D. 98, 107 (S.D.N.Y. 2019) ("These issues ultimately address a single, uniform inquiry: whether defendant's information collection procedures were sufficient and reasonable. *See Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 203 (E.D. Va. 2015) (in a § 1681e(b) case, finding commonality requirement met despite 'various collection methods' because '[e]ach procedure is common across the class and capable of classwide resolution based on jury findings.')) *McIntyre v. RealPage, Inc.,* 2020 WL 5017612, at *11 (E.D. Pa. Aug. 25, 2020) ("Because Plaintiff shares multiple questions of both fact and law with the prospective class—and the Third Circuit has stated that "the named plaintiffs [must only] share at least one question of fact or law with the grievances of the prospective class"—Plaintiff has satisfied the commonality requirement.")

3.  The Named Plaintiff's Claims Are Typical

"[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir.2010) (internal citations omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (internal citations omitted).

Here, Plaintiff was subject to the same policies, practices, and procedures used by Defendant to produce Plaintiff's erroneous consumer report. As stated by the corporate designee, ███████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Like the rest of the Class, he was subject to a consumer report which contained substantially erroneous information caused by

1    Defendant's willful and erroneous reporting of Plaintiff's records. As such, he is typical of the

2    Class.

3           4.   The Named Plaintiff is An Adequate Representative

4           To determine whether named plaintiffs will adequately represent a class, courts must

5    resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest

6    with other class members and (2) will the named plaintiffs and their counsel prosecute the action

7    vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir.

8    2011) (*citing to Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiff has

9    satisfied the adequacy prong of Rule 23(a). Plaintiff does not have any conflicts of interest with

10   other class members; he share common injuries with the class and seek monetary relief that will

11   benefit the entire class. Decl. Brian Miller, at ¶ 32. He actively participated in this case through

12   responding to Defendant's discovery requests and attending depositions. Plaintiff's counsel is

13   experienced in complex class action litigation and has prosecuted this case vigorously. See Decl.

14   Treglio at ¶¶ 15-19, and Ex. A.

15          5.   The Proposed Class Satisfies The Requirements of Rule 23(B)(3)

16          Plaintiffs satisfy the requirements of Rule 23(b)(3) because: (1) questions of law or fact

17   common to class members predominate over any questions affecting only individual members, and

18   (2) a class action is superior to other available methods for fairly and efficiently adjudicating the

19   controversy. See Fed. R. Civ. P. 23(b)(3).

20          a.   Common Questions Predominate Over Individual Questions

21          The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

22   warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045,

23   194 L. Ed. 2d 124 (2016) (internal citation and quotation omitted). The analysis entails "careful

24   scrutiny to the relation between common and individual questions in a case." Id. "An individual

25   question is one where 'members of a proposed class will need to present evidence that varies from

26   member to member,' while a common question is one where 'the same evidence will suffice for

27   each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide

28

proof.'" *Id.* (alterations in original) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)). The "predominance requirement calls only for predominance, not exclusivity, of common questions." *Visa Check/Mastermoney Antitrust Litig. v. Visa*, 280 F.3d 124, 140 (2d Cir. 2001).

Plaintiff meets the predominance element required under Fed. R. Civ. P. 23(b)(3).  As the Supreme Court noted in one of its seminal Rule 23 decisions, "[p]redominance is a test readily met in certain cases alleging consumer … fraud…." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  This is particularly such a case since, as noted above, there are no individualized reliance, statute of limitations, choice of law, or similar issues. The sole question lies with Defendant's policies, practices, and procedures, and whether those policies, practices, and procedures comply with the FCRA.

This is particularly true because Plaintiff and the putative Class seek statutory damages and an award of punitive damages which are determined on the basis of a common proof.  "[T]he recovery of statutory damages under the FCRA is not dependent on proof of injury or harm . . . [and] [t]herefore, plaintiffs are not required to present individualized proof of injury from each class member to obtain an award of statutory damages." *In re Farmers Ins. Co.*, 738 F. Supp. 2d 1180, 1226 (W.D. Okla. 2010) (citation omitted). The FCRA "does not require a named plaintiff or a class member to prove actual harm and/or damage in order to obtain statutory damages and does not specify criteria for determining the amount of statutory damages." *Ashby v. Farmers Ins. Co.,* 592 F. Supp. 2d 1307, 1317 (D. Or. 2008).  In addition, any requirement of proof of actual harm as to all class members in this case would almost certainly render a class action unfeasible." Id.

As such, common issues of law or fact predominate for all members of the Class. See *Soutter*, 307 F.R.D. at 213-18 (predominance satisfied because "the most significant issues in the case pertain to uniform conduct by Equifax — its uniform credit reporting procedures; its knowledge and notice of the defects in its systems; and the willfulness of its conduct"); *Patel*, 308 F.R.D. at 308-09 ("To the extent that there are individual issues, they do not predominate over the several key shared issues that dominate this case."); *Clark v. Experian Info. Sols., Inc.,* 2002 U.S.

1    Dist. LEXIS 20410, at *10 (D.S.C. June 26, 2002) (predominance analysis met because, among

2    other things, "controlling legal issues are governed by 15 U.S.C. § 1681e").

3                  b.    <u>Class Action is a Superior Means of Adjudicating the Issues in this Case</u>

4        In addition to establishing the predominance of common issues, plaintiff is required to

5    undergo an analysis establishing the superiority of the class action, through four factors

6    contemplated under Rule 23(b)(3): (A) the class members' interests in individually controlling the

7    prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

8    the controversy already begun by or against class members; (C) the desirability or undesirability of

9    concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

10    managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). While Rule 23(b)(3) sets out four

11    individual factors for courts to consider, manageability "is, by the far, the most critical concern in

12    determining whether a class action is a superior means of adjudication." *Sykes v. Mel S. Harris &*

13    *Associates,* 780 F.3d 70, 82 (2nd Cir. 2015) (quoting 2 William B. Rubenstein, *Newberg on Class*

14    *Actions* § 4.72 (5th ed. West 2014)).

15        Efficiency is a primary focus in determining whether the class action is the superior method

16    for resolving the controversy presented. *See In re Prudential*, 148 F.3d 283, 315 (3d Cir. 1998).

17    *See also In re Facebook, Inc.*, 312 F.R.D. 332, 351 (S.D.N.Y. 2015) ("The superiority requirement

18    asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against

19    those of alternative available methods of adjudication.") (citations omitted).

20        A class action is superior to other available methods where a class resolution of the

21    common issues among class members "outweighs the difficulties in management of separate and

22    individual claims, and allows access to the courts for those who likely would not gain such access

23    standing alone – particularly in light of the relatively modest amount of statutory damages."

24    *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 413 (E.D. Pa. 2010). "Clearly,

25    relegating these claims to a single action is highly preferable to requiring every class member to

26    find counsel and bring their own action." *Massey v. OnSite Manager, Inc.* 285 F.R.D. 239, 250

27

28

1   (E.D. NY 2012) "That might enable defendant to severely limit its liability, but that of course is

2   irrelevant to a finding of superiority." *Id.* (citation omitted).

3        As the leading class action treatise recognizes: "The desirability of providing recourse for

4   the injured consumer who would otherwise be financially incapable of bringing suit and the

5   deterrent value of class litigation clearly render the class action a viable and important mechanism

6   in challenging fraud on the public." H. Newberg & A. Conte, *Newberg on Class Actions* § 21.30

7   (4th ed. 2002); *accord Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 41 n.9 (1st Cir. 2003) ("[t]he

8   core purpose of Rule 23(b)(3) is to vindicate the claims of consumers … whose individual claims

9   would be too small to warrant litigation" and "[c]lasses such as this one that are made up of

10  consumers are especially likely to satisfy the predominance requirement."). As the Court found in

11  *Manno v. Healthcare Revenue Recovery Group LLC,* "the large number of claims, along with the

12  relatively small statutory damages, the desirability of adjudicating these claims consistently, and

13  the probability that individual members would not have a great interest in controlling the

14  prosecution of these claims, all indicate that [a] class action would be the superior method of

15  adjudicating the plaintiff's claims . . ." *Manno*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) (internal

16  quotations and citation omitted).

17       Plaintiff easily meets the superiority prong required under Fed. R. Civ. P. 23(b)(3). To

18  Plaintiff's knowledge, while there are or have been actions filed against Defendant for

19  misreporting criminal records, there is no pending related cases dealing specifically with the

20  misreporting of expunged, dismissed, or set aside convictions, or of the misreporting of

21  disciplinary infractions as felony convictions. Nor is the Class here unmanageable because, as

22  discussed, the common issues predominating this case are straightforward and there are no

23  individual issues presented.  Since there is no "foresee[able] difficulty managing the class action,

24  and, like many cases brought under the FCRA, the class members do not have a strong interest in

25  individually prosecuting the case," this requirement is met. *Henderson v. Trans Union L.L.C.*, No.

26  3:14-cv-00679-JAG, 2016 U.S. Dist. LEXIS 59198, at *16-17 (E.D. Va. May 3, 2016) (internal

27  quotations and citation omitted).

28

1

## IV.    CONCLUSION

2          For all of the reasons set forth above, Plaintiff respectfully requests that, pursuant to Rules

3    23(a), 23(b)(3) and 23(g) of the Federal Rules of Civil Procedure, the Court (i) grant his Motion

4    for class certification; (ii) designate the named Plaintiff as Class Representative; and (iii) designate

5    the undersigned as Class Counsel.

6     Dated: September 4, 2020                    Respectfully,

7                                                POTTER HANDY LLP.

8

9                                               /s/ James M. Treglio

10                                    By:    James M. Treglio
                                            Attorney for  Plaintiff Brian Miller
11

12    _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28