1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12

13

14

15

16

17

BRIAN MILLER,

              Plaintiff,

      v.

RP ON-SITE, LLC,

              On-Site.

Case No. 19-CV-02114-LHK

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 54

18

19

20

21

22

       Plaintiff Brian Miller brings this putative class action against Defendant RP On-Site, LLC ("On-Site") under the Fair Credit Reporting Act ("FCRA"). Before the Court is Plaintiff's motion for class certification. ECF No. 53-4 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Plaintiff's class certification motion.

23

**I.     BACKGROUND**

24

    **A.  Factual Background on On-Site**

25

26

27

       On-Site is a consumer reporting company that specializes in consumer reports for the real estate industry. Mot. at 3 (citing deposition testimony). On-Site's customers are property managers who ask On-Site to prepare reports on tenant applicants. *Id.* (same). As relevant here, some reports

United States District Court
Northern District of California

1  contain a tenant applicant's criminal record. Sohal Decl. ¶ 5, ECF No. 55-7 (declaration of the

2  director who manages On-Site's tenant screening platforms). Preparing a report on a tenant

3  applicant's criminal record takes roughly four steps.

4      First, On-Site obtains publicly available criminal records from thousands of jurisdictions.

5  *Id.* ¶ 8. To obtain these records, On-Site generally relies on "bulk" data vendors. Where vendor

6  data is incomplete, however, On-Site obtains records from other sources. *Id.* ¶ 15.

7      Second, when On-Site receives a request for a consumer report on a tenant applicant, On-

8  Site searches for data to complete that report. *Id.* ¶ 16. If a report requests information that On-Site

9  does not have on hand, it sometimes makes a specific records request to a specific jurisdiction at

10  the time of the request. *Id.* ¶ 18.

11     Third, On-Site checks each consumer report to ensure that the public records matched to

12  the applicant appear complete. For instance, On-Site checks whether a conviction linked to an

13  applicant has a corresponding severity (*i.e.*, felony or misdemeanor). *Id.* ¶ 20. Convictions that

14  lack a severity designation are routed to a manual review queue. *Id.*

15     Fourth, On-Site provides the consumer report to the tenant applicant and the property

16  manager at the same time. Mot. at 3 (citing deposition testimony). The tenant applicant can then

17  contact On-Site to dispute the report's accuracy. Disputes are routed to a team of investigators.

18  Sohal Decl. ¶ 22. A low percentage of reports are disputed. *Id.* ¶ 23 (sealed percentage). An even

19  lower percentage of reports are found to have errors. *Id.*

20     In this process, On-Site may receive two types of criminal records particularly relevant

21  here. One type is criminal records about expunged, set aside, or dismissed convictions. Receiving

22  such records is unusual because, typically, they are publicly unavailable. *Id.* ¶ 25. Still, sometimes

23  On-Site receives such records because state law makes them available, or a jurisdiction has failed

24  to update its own records. *Id.* ¶ 26. Where a jurisdiction labels a record as set aside or dismissed,

25  On-Site excludes that record from consumer reports. *Id.* ¶ 29.

26     The other type of particularly relevant criminal record is records from departments of

27  correction ("DOCs"). On-Site receives public records from dozens of DOCs. *Id.* ¶ 31 (sealed

28  
Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

number). Most convictions that DOCs provide to On-Site are the conviction(s) that put the tenant applicant in prison. *Id.* ¶ 32. However, On-Site cannot automatically filter DOC records for convictions versus disciplinary infractions committed while in prison. *Id.* ¶ 35. Rather, On-Site checks whether DOC records, like other records, are complete. *Id.* ¶ 36. If a DOC conviction or disciplinary infraction lacks a corresponding severity (*i.e.*, felony or misdemeanor), On-Site puts that record into its manual review process.

### B. Factual Background on Named Plaintiff

Between 1996 and 2005, Plaintiff committed three violent felonies. Specifically, in October 1996, Plaintiff pled guilty to felony robbery in Arizona Superior Court in the County of Maricopa ("Maricopa Superior Court"). *See* On-Site's Opp'n to Class Cert. at 6, ECF No. 55-6 ("Opp'n") (citing deposition testimony). In April 2000, Plaintiff pled guilty to felony aggravated assault in the same court. In 2005, Plaintiff again pled guilty to felony aggravated assault in the same court. These convictions are still publicly available on the Arizona courts website. *Id.* at 7 (same).

While in prison, Plaintiff was not a model prisoner. He committed at least 15 incidents of threatening someone with harm; four incidents of assault; two incidents of tampering; and one incident each of disorderly conduct, possessing a weapon, conspiracy, and stalking. *Id.* at 6 (citing deposition testimony).

As a result of his crimes, Plaintiff lost certain civil liberties. Among these liberties was Plaintiff's right to own a firearm. After being released from prison, Plaintiff thrice asked the Maricopa Superior Court to restore his right to own a firearm. *Id.* Each time, Plaintiff was denied. Thus, Plaintiff admitted at his deposition that his convictions still subject him to legal disabilities. *Id.* Certain other disabilities were lifted, however, after Plaintiff successfully completed Arizona law's requirements for restoring a felon's civil rights. Mot. at 5 (citing A.R.S. § 13-907 and arguing that the convictions were "set aside").

On November 5, 2018, Plaintiff applied for an apartment at the complex "Indigo Lofts." Opp'n at 7. For that application, On-Site provided Indigo Lofts with a consumer report on Plaintiff

1   (the "Report"). *Id.* The Report listed Plaintiff's 1996 and 1999 felony convictions, as well as 26

2   additional "felonies" reported by the Arizona Department of Correction. *Id.* About 25 of those

3   "felonies" were records of the disciplinary incidents that Plaintiff committed in prison. *Id.*

4        Even so, the Report recommended that Indigo Lofts *approve* Plaintiff's application based

5   on Indigo Loft's guideline of considering crimes committed in the past decade. *Id.* at 8 (citing

6   Report and deposition testimony). In turn, Indigo Lofts *approved* Plaintiff's application. *Id.*

7   Ultimately, though, Plaintiff decided not to live at Indigo Lofts. In his view, the Indigo Lofts

8   manager vetting his application was rude. The manager "had her attitude. I'm not going to live

9   somewhere like that." *Id.* at 138:15–17.

10  **C. Procedural History**

11       On April 19, 2019, Plaintiff brought this putative class action against On-Site. ECF No. 1

12  ("Compl."). Plaintiff alleged that On-Site violated the FCRA by (1) willfully not "follow[ing]

13  reasonable procedures to assure maximum possible accuracy" of On-Site's reports, Compl. ¶ 53

14  (quoting 15 U.S.C. § 1681e(b)); and (2) willfully providing adverse information, other than

15  records of convictions, that antedated reports by more than seven years, Compl. ¶ 62 (citing 15

16  U.S.C. § 1681c(a)(2) & (5)). On June 13, 2019, On-Site filed an answer to the Complaint. ECF

17  No. 18.

18       On September 4, 2020, Plaintiff filed the instant motion for class certification. ECF No. 53

19  (sealed version). Plaintiff moved to certify three classes:

20       ["*Disciplinary Infraction Class*"] All natural persons with an address in the United
         States and its Territories about whom, from April 19, 2017 continuing through the
21       resolution of this action, Defendants [sic] prepared a consumer report which
         included information regarding one or more administrative action undertaken by a
22       department of corrections which Defendants [sic] reported as a "felony conviction."

23
         ["*Antedated Report Class*"] All natural persons with an address in the United States
24       and its Territories who were subjects of tenant screening reports created by
         Defendants [sic] from April 19, 2017 and continuing through the resolution of this
25       action, that contained adverse information other than convictions (including
         criminal cases that had been expunged, sealed, set aside, or dismissed) that
26       preceded the report by more than seven years.
27

28

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

["*Expungement Class*"—abandoned on reply] All natural persons with an address in the United States and its Territories about whom, from April 19, 2017 and continuing through the resolution of this action, Defendants [sic] prepared a consumer report which included information regarding one or more criminal case which had been expunged, sealed, or otherwise removed from public dissemination at the time the report was prepared.

Mot. at 1–2. On-Site filed its opposition to class certification on October 5, 2020. ECF No. 55-6 (sealed version). On October 19, 2020, Plaintiff filed his reply. ECF No. 58. In his reply, Plaintiff abandoned certification of the Expungement Class because Plaintiff found many of On-Site's arguments "well-taken." *Id.* at 9 n.1.

## II.    LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 does not set forth a mere pleading standard. To obtain class certification, Plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that Plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23(b) sets forth three general types of class actions. *See* Fed. R. Civ. P. 23(b)(1)–(b)(3). As relevant here, Plaintiffs seek certification under Rule 23(b)(3). A class may be certified under Rule 23(b)(3) if a court finds that "questions of law

1    or fact common to class members predominate over any questions affecting only individual

2    members, and that a class action is superior to other available methods for fairly and efficiently

3    adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

4         "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

5    with the merits of the plaintiff's underlying claim[.]'" *Amgen Inc. v. Conn. Ret. Plans & Trust

6    Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza*, 666 F.3d

7    at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine

8    whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser*, 253

9    F.3d at 1186)). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *Comcast*, 569

10   U.S. at 34 (discussing how Congress included "addition[al] . . . procedural safeguards for (b)(3)

11   class members beyond those provided for (b)(1) or (b)(2) class members (*e.g.*, an opportunity to

12   opt out)" and how a court has a "duty to take a 'close look' at whether common questions

13   predominate over individual ones").

14        Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries

15   at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the

16   extent—but only to the extent—that they are relevant to determining whether the Rule 23

17   prerequisites for class certification are satisfied." *Id.* If a court concludes that the moving party has

18   met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at

19   1186.

20   **III.    DISCUSSION**

21        On-Site argues that Plaintiff's class certification motion fails on five independent grounds:

22   (1) lack of evidence on numerosity; (2) atypicality; (3) inadequacy of Plaintiff as class

23   representative and Plaintiff's counsel as class counsel; (4) lack of predominance and commonality;

24   and (5) unmanageability of class adjudication. The Court addresses numerosity and Plaintiff's

25   inadequacy as class representative below. Because both grounds independently require denial of

26   class certification, the Court need not reach On-Site's other grounds for denying class certification.

27

28
Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

### A. Plaintiff fails to prove numerosity by a preponderance of the evidence.

On-Site first argues that Plaintiff fails to prove that any of the purported classes satisfy Rule 23(a)(1)'s numerosity requirement. The Court agrees.

Plaintiff bears the "burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23." *Mazza*, 666 F.3d at 588. Rule 23(a)(1) requires that "a class must be 'so numerous that joinder of all members is impracticable.'" *Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2020 WL 4458915, at *4 (N.D. Cal. May 27, 2020) (quoting Fed. R. Civ. P. 23(a)(1)). The numerosity requirement "requires examination of the specific facts of each case." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). Given plaintiff's burden of showing numerosity and the Court's "require[d] examination of the specific facts of each case," plaintiff's "failure to present evidence to show numerosity precludes class certification." *Uschold v. Carriage Servs.*, Inc., No. 17-CV-04424-JSW, 2020 WL 1466172, at *11 (N.D. Cal. Mar. 6, 2020), *appeal dismissed*, No. 20-15523, 2020 WL 3470090 (9th Cir. Apr. 24, 2020). In short, "mere conclusory allegations as to the estimated class size are insufficient for plaintiff's burden of proof." *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2019 WL 4450930, at *18 (N.D. Cal. Sept. 17, 2019) (quoting *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004)).

Here, Plaintiff entirely "fail[s] to present evidence" to show numerosity. *Uschold*, 2020 WL 1466172, at *11. Plaintiff instead makes "mere conclusory allegations as to the estimated class size." *Hernandez*, 2019 WL 4450930, at *18 (quoting *Sueoka*, 101 F. App'x at 653). Confirming this conclusion is a simple comparison of Plaintiff's relatively narrow class definitions with his conclusory "evidence" of numerosity.

Plaintiff's two putative classes are the "Disciplinary Infraction Class" and "Antedated Report Class." Both classes comprise persons who have been subjects of On-Site consumer reports containing particular errors during the class period April 19, 2017 through the resolution of this action.

The "Disciplinary Infraction Class" includes persons about whom On-Site erroneously

United States District Court
Northern District of California

reported, during the class period April 19, 2017 through the resolution of this action, a department

of corrections "administrative action" as a "felony conviction." Specifically, Plaintiff defines the

"Disciplinary Infraction Class" as follows:

> All natural persons with an address in the United States and its Territories about
> whom, from April 19, 2017 continuing through the resolution of this action,
> Defendants [sic] prepared a consumer report which included information regarding
> one or more administrative action undertaken by a department of corrections which
> Defendants [sic] reported as a "felony conviction."

Mot. at 2. Plaintiff asserts that the consumer reports at issue in the Disciplinary Infraction Class

willfully violate FCRA's "reasonable procedures" requirement. 15 U.S.C. § 1681e(b). Under that

requirement, On-Site must "follow reasonable procedures to assure maximum possible accuracy of

the information concerning the individual about whom [a] report relates." Compl. ¶ 53 (quoting 15

U.S.C. § 1681e(b)); *see id.* ¶ 55 (discussing "administrative actions by departments of

corrections"). Here, a report is inaccurate if it contains "administrative action[s] undertaken by a

department of corrections" that are not in fact "felony convictions." Accurately reporting felony

convictions does not violate FCRA. *See, e.g.*, *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 755

(9th Cir. 2018) (holding that a plaintiff must first show that defendant prepared an inaccurate

report).

    The "Antedated Report Class" comprises persons about whom, during the class period of

April 19, 2017 through the resolution of this action, On-Site erroneously reported "adverse

information" (other than convictions) more than seven years older than On-Site's report.

Specifically, Plaintiff defines the "Antedated Report Class" as follows:

> All natural persons with an address in the United States and its Territories who
> were subjects of tenant screening reports created by Defendants [sic] from April 19,
> 2017 and continuing through the resolution of this action, that contained adverse
> information other than convictions (including criminal cases that had been
> expunged, sealed, set aside, or dismissed) that preceded the report by more than
> seven years.

*Id.* Plaintiff asserts that the consumer reports at issue in the Antedated Report Class willfully

violate FCRA's requirement that consumer reports must exclude "adverse item[s] of information"

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1   more than seven years old, unless those adverse items are "records of convictions of crimes." 15

2   U.S.C. § 1681c(a)(5).

3       For both putative classes, Plaintiff's only "evidence" for numerosity is two law review

4   articles. Plaintiff cites one article for the Disciplinary Infraction Class, and the other article for the

5   Antedated Report Class. Yet neither article analyzes the instant case or the parties. Not only that,

6   neither article quantifies consumer reports—let alone *On-Site* consumer reports that were

7   *erroneous* in *specific ways* during the *class period* across the United States. Below, the Court

8   discusses (1) the Disciplinary Infraction Class; (2) the Antedated Report Class; and then (3) case

9   law that underscores how Plaintiff has failed to prove numerosity.

10      **1. Plaintiff fails to prove numerosity of the Disciplinary Infraction Class.**

11      To prove the Disciplinary Infraction Class's numerosity, Plaintiff relies solely on Richard

12   Tewksbury et al., *Disciplinary Infractions Behind Bars*, 39 Crim. Just. Rev. 201, 209 (2014)

13   ("Tewksbury article"). Plaintiff claims this article shows that "at least 52.5% of all prisoners incur

14   at least one disciplinary infraction during their prison stays." Mot. at 7.

15      However, prisoners who "incur at least one disciplinary infraction" are not the Disciplinary

16   Infraction Class. The Disciplinary Infraction Class instead comprises persons about whom On-Site

17   erroneously reported, during the class period of April 19, 2017 through the resolution of this

18   action, a prison's "administrative action" as a "felony conviction." Thus, Plaintiff makes a leap of

19   logic from the Tewksbury article to numerosity. Plaintiff assumes that On-Site erroneously

20   reported administrative actions as felony convictions 52.5% of the time—the same percentage as

21   prisoners who "incur at least one disciplinary infraction." Mot. at 7. Plaintiff then multiplies

22   52.5% by 107,183—the number of individuals for whom, between April 19, 2017 and June 19,

23   2020, On-Site reported a felony conviction—and assumes that the result proves numerosity.

24      Plaintiff assumes far too much. At least three baseless inferences underlie Plaintiff's theory

25   of numerosity. First, Plaintiff assumes that the Tewksbury article concluded that "at least 52.5% of

26   all prisoners incur at least one disciplinary infraction during their prison stays." Mot. at 7. Not so.

27   In fact, the Tewksbury article analyzed only *state* prisoners and only prisoners *in the year 2011*—

28

United States District Court
Northern District of California

9

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

about six years before the start of the class period on April 19, 2017. *See* Tewksbury et al., *supra*, at 208.

Second, even if the Tewksbury article actually analyzed the disciplinary infractions of "all prisoners," Mot. at 7, "all prisoners" is many steps removed from the Disciplinary Infraction Class. For one, the Disciplinary Infraction Class only includes persons *screened by consumer reports*. Mot. at 1–2. For another, not all consumer reports count: only *On-Site*'s consumer reports do.

Furthermore, the Disciplinary Infraction Class is a subset of persons screened by On-Site consumer reports. The Disciplinary Infraction Class includes only those whose On-Site consumer report issued since April 19, 2017 through the resolution of this action and *erroneously* "included information regarding one or more administrative action undertaken by a department of corrections which [On-Site] reported as a 'felony conviction.'"

The Tewksbury article, by contrast, analyzed disciplinary infractions received by state inmates in 2011. The article did not mention—let alone analyze—an array of factors key to assessing the Disciplinary Infraction Class's numerosity. For instance, the Tewksbury article did not mention (1) the time period from April 19, 2017 through the resolution of this action; (2) consumer reports; (3) former inmates subject to the "tenant screening" consumer reports described in the Disciplinary Infraction Class; (4) On-Site or any other consumer reporting agency; or (5) whether On-Site erroneously reported disciplinary infractions as "felony convictions" between April 19, 2017 and the resolution of this action. The Tewksbury article's 2011 analysis of state prisoners is thus entirely unmoored from the Disciplinary Infraction Class.

Lastly, the Court would have to assume that the Tewksbury article comprises valid "evidence" or "common sense assumptions" that support numerosity. *Uschold*, 2020 WL 1466172, at *11 (first quote); *Sarmiento*, 2020 WL 4458915, at *5 (second quote). Yet Plaintiff cannot vouch for the statistics nor replicate their calculation. Nor can Plaintiff make the article's authors available to On-Site for cross-examination because the authors are not disclosed experts in this case. Thus, the Court would have to take judicial notice of the statistics over On-Site's vigorous

United States District Court
Northern District of California

1   objections. Doing that would be unwarranted. *See, e.g.*, *Mitchell v. Tillett*, 715 F. App'x 741, 742

2   n.1 (9th Cir. 2018) (refusing to judicially notice a law review article because it "is a source whose

3   accuracy may be debated and questioned"); *Crocker v. Glanz*, 752 F. App'x 564, 568 (10th Cir.

4   2018) (also refusing to judicially notice a law review article cited by plaintiff, even at the motion

5   to dismiss stage). All told, Plaintiff fails to prove that the Disciplinary Infraction Class is "so

6   numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

7       **2.   Plaintiff fails to prove numerosity of the Antedated Report Class.**

8         To prove the Antedated Report Class's numerosity, Plaintiff relies solely on J.J. Prescott &

9   Sonja B. Starr, *Expungement of Criminal Convictions: An Empirical Study*, 133 Harv. L. Rev.

10  2460, 2490 (2020) ("Prescott & Starr article"). Plaintiff claims this article shows that

11  "approximately 6.5% of all persons with felony convictions get their convictions expunged, set

12  aside, or dismissed." Mot. at 7.

13        The same logical fallacies that defeated the Disciplinary Infraction Class also defeat the

14  Antedated Report Class. "[A]ll persons with felony convictions [who] get their convictions

15  expunged, set aside, or dismissed" are not the Antedated Report Class. Mot. at 7. Rather, the

16  Antedated Report Class comprises persons who meet five conditions: (1) "persons with an address

17  in the United States and its Territories" (2) "who were subjects of tenant screening reports created

18  by [On-Site] (3) "that contained adverse information other than convictions (including criminal

19  cases that had been expunged, sealed, set aside, or dismissed)," where (4) that adverse information

20  "preceded the report by more than seven years" and (5) the report was created during the class

21  period of April 19, 2017 through the resolution of this action. Mot. at 2.

22        Thus, connecting the Prescott & Starr article with the Antedated Report Class requires

23  multiple leaps of logic. Plaintiff assumes that On-Site erroneously reports adverse non-conviction

24  information that is more than seven years old—such as convictions expunged more than seven

25  years ago—6.5% of the time. *Id.* Then, like he did with the Disciplinary Infraction Class, Plaintiff

26  multiplies this general percentage by 107,183—the number of individuals for whom, between

27  April 19, 2017 and June 19, 2020, On-Site reported a felony conviction. In Plaintiff's view, the

28

United States District Court
Northern District of California

product of 6.5% times 107,183 proves numerosity.

Again, Plaintiff fails. Three baseless inferences underlie Plaintiff's theory of numerosity. First, Plaintiff assumes that the Prescott & Starr article concluded that "approximately 6.5% of all persons with felony convictions get their convictions expunged, set aside, or dismissed." Mot. at 7. Plaintiff misrepresents the article. The Prescott & Starr article analyzed only felons *in Michigan* with expunged (or expungement-eligible) convictions dated *before at least March 2014*—more than three years before the start of the class period on April 19, 2017. *See* Prescott & Starr, *supra*, at 2483–84. Suffice it to say, the conviction expungement rate in Michigan before at least March 2014 might not mirror the conviction expungement rate "in the United States and its Territories" from April 19, 2017 through the resolution of this action. Mot. at 2.

Second, even if the Prescott & Starr article actually analyzed "all persons with felony convictions [who] get their convictions expunged, set aside, or dismissed," Mot. at 7, that population is many steps removed from the Antedated Report Class. The Antedated Report Class, like the Disciplinary Infraction Class, only includes persons *screened by consumer reports*. Mot. at 1–2. Moreover, not all consumer reports count: only *On-Site*'s consumer reports do.

Furthermore, not all On-Site consumer reports trigger membership in the Antedated Report Class. Three more conditions apply: (1) the On-Site consumer report must have been issued during the class period April 19, 2017 through the resolution of this action; (2) the On-Site consumer report issued during that class period must erroneously contain "adverse information other than convictions," such as expunged criminal cases; and (3) the erroneously reported adverse information must antedate the On-Site consumer report by more than seven years. The Prescott & Starr article fails to quantify any number of consumer reports, let alone the number of On-Site consumer reports that satisfy all these conditions of the Antedated Report Class.

On-Site, for its part, presents unrebutted evidence that the Antedated Report Class is small. On-Site generally does not report expunged, sealed, set aside, or dismissed criminal cases. *See* Sohal Decl. ¶¶ 24–30 (describing On-Site's procedures). When On-Site does report these criminal cases, it is sometimes because state law makes the cases reportable. *See, e.g.*, *G.D. v. Kenny*, 15

United States District Court
Northern District of California

1   A.3d 300, 313 (N.J. 2011) ("As can be seen, the expungement statute does not obliterate the record

2   of a conviction."). Other times, On-Site erroneously reports convictions that were "expunged after

3   On-Site reported [them]." Opp'n at 5 (citing Sohal Decl. ¶ 26). Yet these expunged convictions

4   would postdate On-Site's report—not precede it by more than seven years. Thus, not all reporting

5   errors trigger membership in the Antedated Report Class. Overall, the Antedated Report Class is a

6   long chain of inferences away from Prescott & Starr's analysis of felony expungement rates in

7   Michigan.

8       Lastly, Plaintiff would have the Court assume that the Prescott & Starr article, like the

9   Tewskbury article, comprises valid "evidence" or "common sense assumptions" that support

10  numerosity. *Uschold*, 2020 WL 1466172, at *11 (first quote); *Sarmiento*, 2020 WL 4458915, at *5

11  (second quote). Again, the Court cannot make such a bold assumption. *See, e.g.*, *Mitchell*, 715 F.

12  App'x at 742 n.1 (refusing to judicially notice law review article); *Crocker v. Glanz*, 752 F. App'x

13  at 568 (same). Rather, the Court must "rigorous[ly] analy[ze]" whether Plaintiff has met his

14  burden of proving numerosity. *Mazza*, 666 F.3d at 588 (quoting *Zinser*, 253 F.3d at 1186). Plaintiff

15  has utterly failed to do so here.

16      ### 3. Courts find numerosity lacking where, as here, plaintiff relies on generalized statistics unlinked to class size.

17      Other courts have also rejected tenuous chains of inferences just like Plaintiff's.

18  Specifically, courts have denied class certification in FCRA cases where plaintiff relies on an

19  aggregate number of consumer reports to prove numerosity. Two FCRA cases are especially

20  instructive.

21      In *Jones v. Sterling Infosystems, Inc.* 317 F.R.D. 404, 407 (S.D.N.Y. 2016), plaintiff sought

22  to certify "a Rule 23(b)(3) class of employees or applicants for employment anywhere in the

23  United States who were the subject of a report sold by [d]efendant ['Sterling'] for employment

24  purposes that contained at least one criminal conviction in New York." To prove numerosity,

25  plaintiff "relied on the fact that almost 5,000 background reports were sold by Sterling for

26  employment purposes that contained information obtained through [the New York Office of Court

27

28

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Administration] that related to a person with a then-current address in New York State" during the

2    class period. *Id.* at 413. The *Jones* Court rejected plaintiff's supposed evidence. *Id.* The *Jones*

3    Court reasoned that plaintiff had merely provided "the universe of persons on whom Sterling

4    reported information; it is not the universe of persons as to whom Sterling reported information

5    that was not complete and up to date." *Id.* The *Jones* plaintiff—like Plaintiff here—"provided no

6    information regarding the size of the smaller group of actual class members." *Id.* Thus, the *Jones*

7    Court denied class certification.

8         In *Wilson v. Corelogic SafeRent, LLC*, No. 14-CV-2477-JPO, 2017 WL 4357568 (S.D.N.Y.

9    Sept. 29, 2017), plaintiff also sought to certify a Rule 23(b)(3) class. That class comprised people

10   (1) who had disputed a consumer report for containing information which had been "expunged . . .

11   or otherwise removed from the public record[] prior to the date of the report"; and for whom

12   (2) "[d]efendant's comments in connection with the dispute included the root terms 'unable to

13   verify'; 'remov!'; 'delet!'; 'elim!'; or, 'eras!' or any iteration of those root terms." *Id.* at *5. To

14   prove numerosity, the *Wilson* plaintiff presented statistics that—unlike the statistics here—were

15   relatively specific to defendant's consumer reports. Analyzing defendant's business records, the

16   *Wilson* plaintiff presented 3,993 consumer disputes, of which 685 included the "root terms" in the

17   putative class definition. *Id.* at *6. Even so, the *Wilson* court held that "[p]laintiff has failed to

18   satisfy his burden to prove numerosity." *Id.* at *7 (quoting *Jones*, 317 F.R.D. at 413). The *Wilson*

19   Court reasoned that plaintiff had failed to show numerosity of *inaccurate* reports. *Id.* Here too,

20   Plaintiff's general statistic about the number of On-Site's consumer reports cannot satisfy

21   Plaintiff's burden to prove numerosity.

22        Non-FCRA cases also confirm that general statistics about defendant's conduct cannot

23   prove numerosity. In an ERISA class action about termination benefits, for instance, a plaintiff

24   cannot prove numerosity by pointing to the "31,000 employees covered by the plan [who also] lost

25   their jobs." *Siles v. ILGWU Nat. Ret. Fund*, 783 F.2d 923, 930 (9th Cir. 1986) (affirming denial of

26   class certification). Similarly, in a consumer class action alleging that defendant misled

27   subscribers, plaintiff cannot merely rely on defendant having 649,576 subscribers to prove that

28

14

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1    numerous subscribers were misled. *See Diacakis v. Comcast Corp.*, No. 11-CV-3002-SBA, 2013

2    WL 1878921, at *5 (N.D. Cal. May 3, 2013) (denying certification of Rule 23(b)(2) and (b)(3)

3    class).

4          Lastly, if Plaintiff's failure to prove numerosity were not enough, On-Site presents

5    evidence *against* numerosity. On-Site identifies procedures it uses to check the completeness and

6    accuracy of its reports. *See* Sohal Decl. ¶¶ 6–22, 27–37 (describing procedures). These procedures

7    result in a tiny fraction of On-Site's reports being disputed. *See* Sohal Decl. ¶ 23 (sealed

8    percentages). An even smaller fraction of reports require correction after On-Site investigates a

9    dispute. *Id.*

10          In sum, Plaintiff has failed to prove numerosity under Rule 23(a)(1).

11   **B.  Plaintiff is an inadequate class representative.**

12          Plaintiff's class certification motion fails for yet another reason: Plaintiff has failed to

13   prove that he is an adequate representative of the putative classes. To the contrary, Plaintiff is an

14   inadequate representative. A class may be certified only if "the representative parties will fairly

15   and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Basic consideration of

16   fairness require that a court undertake a stringent and continuing examination of the adequacy of

17   representation by the named class representatives at all stages of the litigation where

18   absent members will be bound by the court's judgment." *Susman v. Lincoln Am. Corp.*, 561 F.2d

19   86, 89–90 (7th Cir. 1977) (quoting *National Association of Regional Medical Programs v.*

20   *Mathews*, 551 F.2d 340, 344–45 (D.C. Cir. 1976)). "To determine legal adequacy, we resolve two

21   questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other

22   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

23   on behalf of the class?'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019)

24   (en banc) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

25          Plaintiff cannot "prosecute the action vigorously on behalf of the class" because he has

26   repeatedly made false statements—including several under penalty of perjury—about key facts

27   underlying his FCRA claims. *Id.* As this Court and others have held, a putative class representative

28

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   is inadequate where, as here, "the representative's credibility is questioned on issues directly

2   relevant to the litigation or there are confirmed examples of dishonesty." *In re Arris Cable Modem*

3   *Consumer Litig.*, 327 F.R.D. 334, 356 (N.D. Cal. 2018) (quoting *Harris v. Vector Mktg. Corp.*, 753

4   F. Supp. 3d 996, 1015 (N.D. Cal. 2010)), *leave to appeal denied sub nom. Reyna v. Arris Int'l*

5   *PLC*, No. 18-80099, 2018 WL 6167340 (9th Cir. Nov. 8, 2018). The reason for this rule is that

6   "there is a danger that absent class members will suffer if their representative is preoccupied with

7   defenses unique to [Plaintiff].'" *Weidenhamer v. Expedia, Inc.*, 2015 WL 7157282, at *19 (W.D.

8   Wash. Nov. 13, 2015) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992));

9   *see, e.g.*, *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (affirming denial of class

10  certification because "the fact that [plaintiff] offered differing accounts about the letters that form

11  the very basis for his lawsuit surely would create serious concerns as to his credibility at any

12  trial."). Here, in court filings and sworn statements under penalty of perjury, Plaintiff has

13  misrepresented not only the felony convictions underlying the allegedly inaccurate consumer

14  report that On-Site produced, but also the alleged injury that consumer report caused. The Court

15  analyzes Plaintiff's convictions and alleged injury in turn.

16        Plaintiff misrepresented his convictions in his complaint and class certification motion. In

17  his complaint, Plaintiff alleged that his convictions had been "set aside and expunged from his

18  record" so that "[u]nder the laws of the State of Arizona, all rights he had before his troubles with

19  the law have been restored to him, and he carries forward no disabilities from his prior troubles

20  with the law." Compl. ¶ 14. Based on this allegation, Plaintiff claimed that "Defendants [sic]

21  violated [15 U.S.C. §] 1681e(b) in its consumer reports issued to its customers by reporting

22  convictions which had been expunged, sealed, or otherwise removed from public dissemination."

23  *Id.* ¶ 54. In particular, On-Site allegedly violated FCRA by reporting Plaintiff's "set aside"

24  convictions to Indigo Lofts, an apartment complex where Plaintiff had applied to live. *Id.* ¶ 17.

25        Plaintiff then doubled down on this argument in his class certification motion. There,

26  Plaintiff argued that "under A.R.S. § 13-907, all of his convictions had previously been set aside as

27  a matter of Arizona law" and so should not have been reported to Indigo Lofts. Mot. at 5.

28

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

Yet Plaintiff now concedes, as he must, that much of what he represented about his convictions is false. Specifically:

- Plaintiff represented that "all rights he had before his troubles with the law have been restored to him." Compl. ¶ 14. In reality, that was "not a true statement," Plaintiff confirmed at his deposition. Dep. Tr. 81:14–82:2, ECF No. 55-2.

- Plaintiff represented that On-Site had reported convictions "removed from public dissemination." Compl. ¶ 54. In truth, Plaintiff's convictions are still "publicly available on the Arizona courts website." Dep. Tr. 45:4–6.

- Plaintiff represented that his convictions had been "expunged from his record," Compl. ¶ 14, and that "under A.R.S. § 13-907, all of his convictions had previously been set aside." Mot. at 5. However, Arizona law is clear that "section 13-907 does not expunge or remove the *fact* of conviction in Arizona." *Russell v. Royal Maccabees Life Ins. Co.*, 974 P.2d 443, 446 (Ariz. Ct. App. 1998) (emphasis in original). "A person whose felony conviction has been set aside under A.R.S. § 13-907 must still disclose it when asked if the person has ever been convicted of a felony." *Parsons v. Arizona Dep't of Health Servs.*, 395 P.3d 709, 712 (Ariz. Ct. App. 2017).

The above falsehoods are not even the most egregious, however. Plaintiff's worst falsehoods relate to the alleged injury that On-Site's consumer report inflicted on Plaintiff. Plaintiff repeatedly averred under penalty of perjury or represented that On-Site's consumer report resulted in Indigo Lofts denying his tenancy application. In truth, Indigo Lofts *approved* Plaintiff's tenancy application. Specifically:

- In response to Interrogatory No. 3, Plaintiff averred under penalty of perjury that "[a]fter the consumer report was conducted, the apartment manager and/or property manager at Indigo notified claimants that the consumer report had contained numerous criminal offenses including federal convictions for sexual harassment[.] As a result, Plaintiff was informed that his application would be denied." Dep. Tr. 143:2–12 (quoting Interrogatory No. 3). Yet at Plaintiff's deposition, Plaintiff admitted "[i]t is false to say Plaintiff was informed that his application would be denied." *Id.* at 144:11–13.

- Similarly, in his declaration supporting the class certification motion, Plaintiff averred under penalty of perjury that "because of the incident with my wife and the manager at Indigo Lofts, I knew that my application to rent would be denied." Miller Decl. ¶ 24, ECF No. 54-2. Again, Plaintiff admitted "that's also false, correct, because [his] application wasn't denied by Indigo Lofts[.]" Dep. Tr. 138:13–14. Rather, Indigo Loft's manager was simply rude to him. As Plaintiff testified, "it's the way she had -- she had her attitude. I'm not going to live somewhere like that. . . . That's why we [Plaintiff and his wife] didn't

17

take it." *Id.* at 138:15–17, 143:24.

- In Plaintiff's class certification motion, Plaintiff represented that "[a]s a result of the items contained in the Report [issued by On-Site], Brian Miller's application for housing was turned down." Mot. at 5. Plaintiff admitted this representation was "false." *Id.* at 171:8.

Given the many confirmed falsehoods detailed above, "[Plaintiff]'s credibility is questioned on issues directly relevant to the litigation [and] there are confirmed examples of dishonesty." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. at 356 (N.D. Cal. 2018) (quoting *Harris*, 753 F. Supp. 2d at 1015). Plaintiff is thus an inadequate class representative. Accordingly, the Court cannot certify any of Plaintiff's putative classes.

Indeed, courts have denied class certification for less. Three cases are illustrative. In *Kaplan v. Pomerantz*, plaintiff gave false deposition testimony that possibly was "of marginal relevance to th[e] lawsuit." 132 F.R.D. 504, 510 (N.D. Ill. 1990) (Rovner, Circuit J.). Still, then-District Judge Illana Rovner decertified the class. Judge Rovner reasoned that plaintiff had "evince[d] a willingness to give intentionally false and misleading testimony in an effort to further his interests in this litigation. Under these circumstances, allowing him to prosecute this case as a class action would not be fair to the Court, to the defendants, or to the other individuals whose interests plaintiff purports to represent." *Id.* Here, allowing Plaintiff "to prosecute this case as a class action" would be even more unfair because Plaintiff's falsehoods are more than "of marginal relevance to this lawsuit." *Id.* Rather, Plaintiff's false statements—including several under penalty of perjury—exaggerated the inaccuracy of On-Site's consumer reports and the harm those consumer reports inflict.

Analogously, in *Kline v. Wolf*, 702 F.2d 400 (2d Cir. 1983), it was not even clear whether both named plaintiffs had lied or whether their lies were relevant to all their class claims. One named plaintiff "testified that he had relied upon a report which he now admits did not exist at the time he allegedly relied upon it." *Id.* at 403. The other named plaintiff had "a shadow over" her testimony because a third-party disputed the testimony's veracity. *Id.* Given plaintiffs' dubious testimony, the district court "made a preliminary determination that their credibility was vulnerable to attack" and denied class certification. *Id.*

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1    The *Kline* plaintiffs appealed, arguing that (1) "there was insufficient evidence to find that

2    the plaintiffs' credibility was seriously in doubt," *id.* at 402; and (2) their questionable testimony

3    "should not preclude their representation of the class since this testimony was irrelevant to their

4    alternate claim." *Id.* at 403. The Second Circuit disagreed. In response to plaintiffs' first argument,

5    the Second Circuit reasoned that even if the false "testimony was the product of an innocent

6    mistake, it subjects [plaintiff's] credibility to serious question." *Id.* In response to plaintiffs'

7    second argument, the Second Circuit reasoned that "[s]ince plaintiffs' testimony on an issue

8    critical to one of their two causes of action was subject to sharp attack, the district court

9    reasonably concluded that their credibility in general was sufficiently in doubt to justify denying

10   them a fiduciary role as class representatives with respect to both claims." *Id.* Thus, the Second

11   Circuit affirmed the district court's denial of class certification.

12   Here, it is harder to assume that Plaintiff's false statements were "the product of an

13   innocent mistake." *Id.* Plaintiff repeated the falsehoods unequivocally, repeatedly, in writing, and

14   under penalty of perjury. Plaintiff did so in the Complaint, a sworn interrogatory response, his

15   class certification motion, and a sworn declaration supporting his class certification motion.

16   Moreover, Plaintiff's falsehoods are not "irrelevant to [an] alternate claim" for which Plaintiff

17   seeks class certification. *Id.* Plaintiff seeks class certification under two FCRA provisions: 15

18   U.S.C. §§ 1681e(b) & 1681c(a)(5). *See* Compl. ¶¶ 53, 63. Under either provision, it is relevant

19   whether a consumer report accurately reports convictions. *See id.* §§ 1681e(b) (requiring

20   "reasonable procedures to assure maximum possible accuracy") & 1681c(a)(5) (exempting from

21   liability reports on "records of convictions"). Thus, it is relevant that Plaintiff misrepresented

22   several of his convictions as "expunged," "removed from public dissemination," and thus exempt

23   from On-Site's reporting.

24   The last illustrative case is also a FCRA case. In *Searcy v. eFunds Corp.*, defendants

25   submitted a declaration that "cast significant doubt on the veracity of [plaintiff]'s sworn

26   statement." No. 08-CV-985, 2010 WL 1337684, at *1 (N.D. Ill. Mar. 31, 2010). The *Searcy* Court

27   thus decertified the two FCRA classes it had certified only a couple months before. *Id.* at *6. The

28

United States District Court
Northern District of California

19

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

*Searcy* Court decertified both classes even "[]though [plaintiff] did not offer the problematic declaration in support of her adequacy to represent [one] class." *Id.* at *5. In the court's view, "[plaintiff]'s credibility issues likewise affect her ability to adequately represent the interests of that class." *Id.* Here, by contrast, Plaintiff's credibility issues affect his ability to adequately represent the interests of *all* the FCRA classes.

With all this authority against him, Plaintiff relies extensively on one district court case. Plaintiff claims that in *McIntyre v. On-Site*, No. 18-CV-3934, 2020 WL 5017612, at *8 (E.D. Pa. Aug. 25, 2020), the district court "certified a class against On-Site's inaccuracies related to reporting of evictions on the very same consumer reports that are at issue here." Mot. at 10. Plaintiff overstates *McIntyre*. Far from addressing "the very same consumer reports that are at issue here," *McIntyre* analyzed reports on *eviction* records, not convictions. *See McIntyre*, 2020 WL 5017612, at *1. Regardless, Plaintiff's reliance on *McIntyre* is misplaced. In *McIntyre*, On-Site failed to contest numerosity and "there [was] no indication" that plaintiff was an inadequate representative. *Id.* at *10, 13. Here, by contrast, On-Site has vigorously contested numerosity, and Plaintiff is a patently inadequate class representative.

All told, the Court denies class certification for two independent reasons. First, Plaintiff has failed to prove that any putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, Plaintiff is an inadequate class representative.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for class certification.

**IT IS SO ORDERED.**

Dated: November 25, 2020

_____
LUCY H. KOH
United States District Judge

Case No. 19-CV-02114-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION